# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 28, 2011

No. 10-20551
Summary Calendar

Lyle W. Cayce
Clerk

KATHRYN BAUMEISTER,

Plaintiff-Appellant,

versus

AIG GLOBAL INVESTMENT CORPORATION,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-1533

Before DAVIS, SMITH, and SOUTHWICK, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Kathryn Baumeister appeals a summary judgment in favor of AIG Global

Investment Corp. ("AIGGIC") on claims of sex and pregnancy discrimination. Be-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-20551

cause a reasonable jury could not find that AIGGIC's proffered legitimate reason for laying her off was pretextual, we affirm.

I.

Baumeister began working at a company called American General in 1989 as a staff accountant. American International Group, Inc. ("AIG"), purchased American General in 2001 and transferred Baumeister to its High Yield Group within AIGGIC, where she worked as a portfolio analyst. The High Yield Group manages AIG investments, including the AIG general accounts, separate accounts (non-AIG affiliated accounts, such as pensions and the general accounts of other companies), mutual funds, collateralized bond obligations ("CBO's"), and credit default swaps ("CDS's"). There was only one other portfolio analyst in the group, Shawn Parry. Baumeister twice took pregnancy leave, once from September to November 2006 and again from July to October 2008.

In January 2009, AIGGIC informed Baumeister that she was being eliminated as part of a reduction-in-force ("RIF") effective March 2009. The RIF was a response to AIG's September 2008 liquidity crisis caused by the deterioration of U.S. credit markets. To stabilize the company, AIG management developed a plan to sell many of its units, including parts of AIGGIC. To position itself for that sale, AIGGIC instituted a restructuring plan that included eliminating non-essential positions.

Matt Meyer, the managing director and head of U.S. public fixed income for AIGGIC, asked Bryan Petermann[1] to recommend one portfolio analyst and three credit analysts in the High Yield Group for the RIF. Petermann recommended laying off Baumeister, Ravi Klamath (male), Mike Lanier (male), and

_____

[1] The record does not say what Petermann's position was at the time. Later, he became the managing director and head of U.S. public fixed income for AIGGIC. He now works elsewhere.

2

No. 10-20551

Joanna Moon (female). Petermann did not recommend the other portfolio analyst, Parry, for the RIF.

## II.

We review a summary judgment *de novo*. *Floyd v. Amite Cnty. Sch. Dist.*, 581 F.3d 244, 247 (5th Cir. 2009). Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id.* at 247-48. In other words, it is appropriate if a reasonable jury could not return a verdict for the nonmovant. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). We review the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts in the nonmovant's favor. *Boston Old Colony Ins. Co. v. Tiner Assocs.*, 288 F.3d 222, 227 (5th Cir. 2002).

Baumeister claims that AIGGIC discharged her because of her sex and because she took pregnancy leave.[2] Title VII prohibits an employer from "fail[ing] or refus[ing] to hire or . . . discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1) (2006). The Family and Medical Leave Act entitles "an eligible employee . . . to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter," 29 U.S.C. § 2612(a)(1)(A), and, upon return from leave, entitles "any eligible employee . . . to be restored by the employer to the position of employment held by the employee when the leave was com-

---

[2] Baumeister also brings a sex discrimination claim under state law, but it is evaluated under precisely the same standards as her title VII claim. *See* 2 TEX. LAB. CODE ANN. § 21.051; *McClaren v. Morrison Mgmt. Specialists, Inc.*, 420 F.3d 457, 461-62 (5th Cir. 2005) (citing *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 475 (Tex. 2001)).

No. 10-20551

menced[] or . . . to be restored to an equivalent position," § 2614. The Act also renders it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." § 2615.

Where, as here, there is no direct evidence of discrimination, a plaintiff can rely on circumstantial evidence. *Rutherford v. Harris Cnty.*, 197 F.3d 173, 180 n.4 (5th Cir. 1999). Baumeister's title VII and FMLA claims are then both governed by the *McDonnell-Douglas* burden-shifting framework.[3] First, the employee must demonstrate by a preponderance of the evidence a *prima facie* case of discrimination. *Id.* If he succeeds in doing so, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 253 (citation omitted). If the employer does so, then the employee must prove by a preponderance of the evidence that the reasons were pretextual. *Id.* Because Baumeister's title VII and FMLA claims largely overlap, we discuss them together.

Because we decide in favor of AIGGIC, we assume *arguendo* that Baumeister has satisfied her *prima facie* case as to her title VII and FMLA claims. We therefore proceed to the second *McDonnell-Douglas* step: whether AIGGIC has articulated a legitimate, non-discriminatory reason for the termination. *See Burdine*, 450 U.S. at 253. AIGGIC has proffered a legitimate, non-discriminatory reason for terminating Baumeister: that she was terminated as part of a RIF because Petermann believed her primary job function was to support CBO's, a product the company was winding down, whereas Parry's primary responsibilities were supporting separate accounts and mutual funds, functions that were

---

[3] *E.g., Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (title VII claim); *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999) (FMLA claim), *partially abrogated on other grounds by Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-49 (2000).

No. 10-20551

"not going away."

We therefore turn to step three: whether AIGGIC's reason was pretextual. Baumeister does not contest that AIG was winding down its CBO's. Indeed, she testified that AIG was not issuing new CBO's and that, although there were six left "in some sort of active state" at the time of her layoff, they were "fading out." Rather, she contests Petermann's claim that CBO support was her primary job function and argues that his reason was pretextual because of the difference between her and Parry's qualifications. But even viewing the facts in the light most favorable to Baumeister, a reasonable jury could not find that she has proven pretext by a preponderance of the evidence.

## A.

With respect to Baumeister's job function relative to Parry's, Baumeister testified that when she originally started on her job, she spent half her time helping the managers for the CBO's that AIG had issued and the other half analyzing CBO's that others had issued. By 2007, 70% of her work involved CBO's; in 2008, she said it was "40 to 50 percent." Her 2008 performance appraisal gives 40% weight to her "[w]ork toward closing down 1-2 of the CBO transactions," 40% weight to "[i]ncreas[ing] knowledge" of trading and analytics systems, portfolio guidelines and securities held, 15% to moving the group to a "more automated portfolio reporting system," and 5% to complying with her professional code of ethics. The appraisal lists work aiming at closing down the CBO's as her only "operational" business goal. Managing separate accounts or mutual funds is not listed as a goal. *See id.*

In addition, although Baumeister testified that her workload involved a "balance" of CBO and portfolio management work, she considered herself "pigeon-holed into doing mostly CBO work." She also testified that she ended up doing more CBO work, and Parry did more portfolio management work. It appears

that the extent to which she did portfolio management work and Parry did CBO work was that "[i]f he had availability to work on a question that came up on the CBOs and I was working on something else, he did that. If something needed to be done on the portfolio management side and I had availability, then I did that." Therefore, Petermann's claim––that he included Baumeister in the RIF because, as between her and Parry, Petermann viewed her as the CBO specialist and Parry as the separate accounts and mutual funds specialist––is buttressed, rather than contradicted, by Baumeister's evidence. A reasonable jury could therefore not conclude by a preponderance of the evidence that Petermann's explanation is "unworthy of credence."[4]

### B.

Baumeister argues that AIGGIC's proffered legitimate, non-discriminatory reason for laying her off is pretextual because of the difference between her qualifications and Parry's. We can infer pretext if the plaintiff was "clearly better qualified than the employee[]" who was not laid off.[5] But aside from the fact that Baumeister had more tenure in the High Yield Group (and with AIGGIC in general) than did Parry, there is no evidence in the record as to Parry's qualifications, making any comparison between him and Baumeister impossible. Baumeister asserts that Parry, unlike her, does not have an MBA or a CPA, but she does not point to any evidence in the record saying so; the parts of the record she

---

[4] *See Reeves*, 530 U.S. at 143 ("[T]he plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" (quoting *Burdine*, 450 U.S. at 256)).

[5] *See Celestine v. Petroleos de Venez. SA*, 266 F.3d 343, 356-57 (5th Cir. 2001) ("[I]n an employment discrimination case, a plaintiff may survive summary judgment and take his case to the jury by providing evidence that he is clearly better qualified than the employee selected for a position at issue."); *cf. Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457-58 (2006) (per curiam) (holding that courts may not infer pretext only if a difference in qualifications "jump[s] off the page to slap you . . . in the face," but declining to decide whether courts can require "clearly superior" or "significantly better" qualifications (citations omitted)).

points to say nothing of the sort.  Indeed, her EEOC charge contradictorily asserted that Parry "recently finished his MBA and is sitting for his Certified Public Accountant examination."  Moreover, there is no evidence about where Parry or Baumeister obtained their MBA's, so there is no indication of the relative strengths of the training they received.  Finally, there is no evidence about Parry's performance reviews; even with worse credentials, he may be a superior employee.  A reasonable jury would not be able to find on this evidence that Baumeister was "clearly" better qualified than Parry.

## C.

With respect to her pregnancy discrimination claim only, Baumeister argues that the temporal proximity between her return from pregnancy leave and her discharge demonstrates that AIG's laying her off as part of its RIF was pretext. Although temporal proximity between FMLA-protected leave and a subsequent termination may be sufficient evidence of pretext, courts "uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).  A three-month period, standing alone, is insufficient. *See Richmond v. Oneok, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997).  The district court erroneously considered Baumeister's temporal-proximity evidence in isolation, rather than in conjunction with her other pretext evidence, but even considered in conjunction with the other evidence, it is insufficient for a reasonable jury to conclude that Petermann's legitimate reason for laying her off is "unworthy of credence." *See Reeves*, 530 U.S. at 143.

The summary judgment is AFFIRMED.