# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 8, 2013

Lyle W. Cayce
Clerk

No. 13-20049
Summary Calendar

PAMELA A. LORENTZ,

Plaintiff-Appellant

v.

ALCON LABORATORIES, INC.,

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-1778

Before KING, CLEMENT, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Pamela Lorentz took leave under the Family and Medical Leave Act to care for her sick daughter. She alleges that upon her return to work, her employer, Alcon Laboratories, Inc., terminated her in retaliation for taking leave. Lorentz appeals the district court's grant of Alcon's motion for summary judgment. For the following reasons, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-20049

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Pamela Lorentz ("Lorentz") began working for Alcon Laboratories, Inc. ("Alcon") as a refractive account manager on January 5, 2007.  Her responsibilities included selling two types of Alcon premium intraocular lens implants, and managing a sales territory consisting of the Houston area, as well as parts of Louisiana and Mississippi.  Her responsibilities also included performing various administrative tasks, such as logging sales calls and timely submitting reports to her supervisor.  Although she received an overall performance rating of "Fully Meets Expectations" on her 2007 performance review, the review identified several areas in need of improvement.  Specifically, the review noted that "[a]dministrative tasks are completed with mixed timeliness," Lorentz's sales call reporting was "hit or miss on consistency," and her sales calls had been "impacted significantly" by her "personal obligations." From January to April 2008, her territory management "was below expectations," and she suffered "performance deficiencies."

Part of Lorentz's employment problems stemmed from her efforts to manage her thirteen-year-old daughter's medical problems, which became serious in October 2007.  According to Lorentz, "[i]t was becoming 'increasingly difficult' . . . to manage her daughter's illness and her job of selling" Alcon's products.  Her supervisor and division manager, Matt Bachmann, also became frustrated with her need to leave work to take her daughter to different doctors.

The stress Lorentz experienced trying to balance her professional and personal obligations caused her to make mistakes at work, which eventually led her to meet with Bachmann and request leave to care for her daughter under the Family and Medical Leave Act ("FMLA").  Bachman apparently was taken aback by her request, grew red in the face, and said they needed to end the conversation before either one of them said something they would regret.  Her request for leave was granted, however, and she was on leave from May 5 to July

25, 2008—the full twelve weeks available under FMLA. During this time, Bachmann called Lorentz three or four times to find out when she would be coming back to work. Lorentz eventually returned to work on July 28 to a territory consisting only of the greater Houston area in accordance with Alcon's earlier plan to realign its territories across the United States.

Upon her return, Lorentz continued to struggle despite the reduced territory. According to Lorentz, she had a "horrible" sales month in August. Additionally, although having no more paid time off ("PTO"), she also was absent from work during all or part of three days between July 28 and September 10. Her inconsistent completion of administrative tasks also continued.

She received a visit on August 21 from Bachmann's supervisor, regional director Craig Vlaanderen, who asked her about Bachmann, her daughter, and the leave of absence. Vlaanderen, together with Bachmann, again met with Lorentz on September 10. They discussed Lorentz's performance deficiencies, including the three days she was absent in whole or in part since returning from FMLA leave. A letter dated September 17 summarized their conversation, and listed the areas in which Lorentz needed to improve. The letter also warned that her "job performance [was] trending toward a [below expectations] rating." It also listed, as "certain minimum job expectations," attendance in the field, prompt attendance at all business functions, three sales calls each business day, properly documenting sales calls, and completing all administrative tasks in a timely manner. According to Lorentz, no other employee was subjected to similar requirements and Alcon's company policy typically provided flexible leave time for sales professionals.

Lorentz, Bachmann, and Vlaanderen again met on November 5 to discuss her continuing problems. These included being late to pick up Bachmann during a field visit, repeatedly failing to make three sales calls per day, and failing to send call planning reports. Vlaanderen informed her that he had lost confidence

in her ability to do her job and that she could resign. When Lorentz refused to resign, she was placed on a 90-day Performance Improvement Plan ("PIP") beginning December 1, 2008. As before, Lorentz was required to adequately complete her administrative duties, but also had to improve sales in her territory by an increment of five percent per month.

At the end of 2008, Lorentz's overall performance was rated as below expectations. Her performance under the PIP was reviewed in March 2009. While improving in certain areas, she failed to meet all PIP requirements. The PIP was extended for 60 days. Lorentz continued making some progress, but her completion of administrative duties remained deficient. Her employment subsequently was terminated effective May 15, 2009.

On May 10, 2011, Lorentz filed suit in district court alleging that Alcon interfered with her substantive rights under FMLA and retaliated against her for taking FMLA leave. Alcon moved for summary judgment, which the district court granted on January 4, 2013. The district court found that Lorentz's request for leave was granted, and that Alcon did not interfere with her leave. It further found that her employment was not terminated because she took leave, and also rejected her contention that other similarly situated employees were retaliated against for taking FMLA leave. It concluded that Lorentz "was fired for exacerbating a long-term low performance in sales and support work with impudence." Lorentz timely appealed the district court's dismissal of her FMLA retaliation claim.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, applying the same standards as the district court. *Lindquist v. City of Pasadena Tex.*, 669 F.3d 225, 232 (5th Cir. 2012). The district court's judgment should be affirmed "if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute [as] to any material fact and the movant is entitled

No. 13-20049

to judgment as a matter of law." *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 (5th Cir. 2011); *see* Fed. R. Civ. P. 56(a).

## III. DISCUSSION

On appeal, Lorentz argues only that the district court improperly granted summary judgment on her claim that Alcon retaliated against her for taking a twelve-week leave of absence under FMLA.[1]  Because Lorentz relies on circumstantial evidence to support her FMLA retaliation claim, we turn to the familiar *McDonnell Douglas* burden-shifting framework.[2]  *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001).  Under that framework, Lorentz must first establish a prima facie case of retaliatory discharge by showing that: "(1) she engaged in a protected activity, (2) the employer discharged her, and (3) there is a causal link between the protected activity and the discharge." *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).  If she can establish her prima facie case, the burden shifts to Alcon to articulate a legitimate, nonretaliatory reason for terminating her.  *Id.*  If Alcon presents such a reason, the burden shifts back to Lorentz to show "by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination." *Id.* at 332–33.

An employee may establish pretext "directly, by showing a [retaliatory] reason motivated management, or indirectly, by showing that the reasons given

---

[1] Finding the district court's grant of summary judgment correct, we do not reach Lorentz's argument that on remand we should reassign this case to a different district judge.

[2] Confusingly, Lorentz argues in her reply brief that she has presented direct evidence of retaliatory intent, despite otherwise conforming her arguments to the *McDonnell Douglas* burden-shifting framework.  *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012) (discussing four-part test for direct evidence claims and two-part test for mixed evidence claims).  However, a review of her appellate brief shows that the evidence she presents actually relates to establishing the causal link of her prima facie retaliation claim.  As discussed later, we assume, without deciding, that Lorentz has sufficiently established a prima facie FMLA retaliation claim.

for management's actions are simply not believable." *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Alternatively, pretext may be established through evidence of disparate treatment. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011); *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

For purposes of this appeal, Alcon does not dispute that Lorentz has established a prima facie case of retaliatory discharge. Similarly, Lorentz does not dispute that poor performance could constitute a legitimate, nonretaliatory reason for her termination. Therefore, the only remaining issue is whether Lorentz can show that Alcon's purported reasons for terminating her—deficient performance—were pretextual.[3]

Lorentz puts forth various grounds on which to find pretext. She primarily relies on what she describes as her employer's relentless attacks and adverse actions following her return from leave to show a retaliatory motive. She also disputes the district court's characterization of her as a long-term poor performer, and thus seeks to undermine Alcon's explanation that she was terminated for performance-related reasons.[4] Finally, she argues that she was treated less favorably than other employees and that other employees who took FMLA leave also suffered retaliatory action. After reviewing Lorentz's

---

[3] The parties dispute whether Lorentz preserved her challenge under the alternate "mixed-motive framework," which modifies the third step of the *McDonnell-Douglas* framework by allowing an employee to avoid summary judgment if she "offer[s] sufficient evidence to create a genuine issue of fact . . . that the employer's [nonretaliatory] reason, although true, is but one of the reasons for its conduct, another of which was [retaliation]." *Richardson*, 434 F.3d at 333. We agree with Alcon that Lorentz did not sufficiently raise her mixed-motive theory in district court. *See Nasti CIBA Specialty Chems. Corp.*, 492 F.3d 589, 595 (5th Cir. 2007) (litigant seeking to preserve argument for appeal "must press and not merely intimate the argument during the proceedings before the district court").

[4] Although there is some dispute as to whether Lorentz also was terminated for insubordination, Alcon's termination letter refers only to "performance reasons."

arguments, we conclude that Lorentz has not met her burden of showing that Alcon's reason for terminating her was pretextual.[5]

## A.     Retaliatory Statements

Central to Lorentz's retaliation claim is her characterization of the September 10 meeting between herself, Bachmann, and Vlaanderen (and the subsequent September 17 letter summarizing their meeting) as evidencing a retaliatory motive.  *See Laxton*, 333 F.3d at 578 ("A plaintiff may establish pretext . . . by showing that the employer's proffered explanation is false . . . . [i.e.,] it is not the real reason for the adverse employment action.").  According to Lorentz, on September 10, Bachmann and Vlaanderen "team[ed] up" and "confront[ed] Lorentz about her time away from work."  In support of her argument, she identifies various statements made by Bachmann and Vlaanderen.  These include that Lorentz was "trying to make her work 'cooperate with everything else' in her life," that unlike Lorentz, Vlaanderen "leaves his family to go to work," that she may not be "'a good fit' or 'the right fit'" for the company, and that "there are 'other options' for her."

A review of the transcript of the meeting Lorentz secretly recorded shows not only that her description of the meeting is inaccurate, but also that the

[5] Because Lorentz discusses temporal proximity between when she returned from leave and when she purportedly suffered adverse employment actions only in the context of establishing her prima facie case, it is unclear whether she also relies on this ground to show pretext. *See Baumeister v. AIG Global Inv. Corp.*, 420 F. App'x 351, 356 (5th Cir. 2011) (unpublished) (pretext may be established through temporal proximity between FMLA leave and termination). Lorentz points out that only six weeks passed from when she returned from leave before Bachmann and Vlaanderen met with her to critique her performance. As later discussed, we find that the September 10 meeting does not support Lorentz's claim of pretext. *See Wilson v. Noble Drilling Servs., Inc.*, 405 F. App'x 909, 914 (5th Cir. 2010) (per curiam) (unpublished) (suspicious timing without more is insufficient to show pretext). Additionally, Lorentz had received many warnings about her performance in the past. *See Grubb v. Sw. Airlines*, 296 F. App'x 383, 390 (5th Cir. 2008) (per curiam) (unpublished) (termination of flight instructor three weeks after raising possibility of FMLA leave did not show pretext where instructor had received several warnings relating to performance problems over previous eighteen months). As a result, to the extent she seeks to show pretext through temporal proximity, her argument fails.

quotations she relies on are taken out of context. The September 10 meeting actually was about how Lorentz's personal life continued interfering with her work despite Lorentz having used up all her remaining PTO and FMLA leave.[6] The three talked about the workdays that Lorentz had missed since returning from FMLA leave either because she was sick or because her daughter had to be taken to the doctor. They also discussed problems relating to the time her daughter's school was starting. All this led Vlaanderen to comment that "it seems like your work has to fit with your life," and that "it doesn't matter to me why [you miss work]. All [that] matters to me is that all of these things keep you away or are reasons why you either can't be there or you have to cut the day short, whatever. And all I'm telling you is . . . that can't happen."

Vlaanderen returned to this topic many times throughout the meeting. "I don't know if it's the timing in—in your life and this job. But . . . now it seems to be in conflict with everything else, and that can't be. . . . So we have to figure that out, or ultimately, we'll have to part ways." Lorentz responded "I agree. Absolutely." She continued, "[t]he honest truth is my family comes before anything else. But I do recognize that, you know, there has to be a balance there. And unfortunately, the way [my] life is, my husband's gone a lot and, you know, the kids . . . ." Later still, Vlaanderen observed that "there's always a good reason [for your absence]. And [we are] not saying that there are no good reasons. There are mitigating circumstances, but there is a body of evidence, all of it keeping you, again, from being in your job, you know, all the time doing things we need you to do." Vlaanderen's statements reflect the difficult position a manager faces when an employee exhausts her PTO and FMLA leave, but continues to miss work for personal reasons. Vlaanderen encouraged Lorentz

---

[6] Although asserting that she could have borrowed additional PTO from that available the following year, Lorentz acknowledged during the meeting that she did not have any remaining PTO.

to contact Alcon's human resources department, but stressed that her missing work—regardless of the reasons—could not continue. Nothing in the September 10 meeting transcript demonstrates that Bachmann and Vlaanderen cared about the fact that Lorentz had taken FMLA leave, rather than that she was failing to keep up with her work.[7] *See Grubb*, 296 F. App'x at 391 ("As a general proposition, '[a]n employee who requests or takes protected leave under the FMLA is not entitled to any greater rights or benefits than he would be entitled to had he not requested or taken leave.'" (alteration in original) (citation omitted)). Lorentz has failed to show pretext based on the September 10 meeting, or the subsequent September 17 letter.[8]

## B.     Deficient Performance

Lorentz also seeks to show that her work was not deficient, and thus Alcon's reason for terminating her is "unworthy of credence." *See Laxton*, 333 F.3d at 578 (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). She points out that the only review of her work to have been completed prior to her FMLA leave (and thus, according to her, before any retaliatory intent could bias subsequent evaluations) listed her as fully meeting expectations at the end of 2007. Her field training manager also was "extremely impressed" by her overall progress. Lorentz does not address the many parts of

---

[7] Lorentz asserts that Alcon's actions contravene FMLA's purpose because Congress intended for employees like her to take FMLA leave to balance their professional and personal responsibilities. But here the problem is not that Lorentz did not take FMLA leave. Instead, the problem is that the amount of leave was insufficient for Lorentz to resolve her problems at home. However, while an employer may "provide[] greater unpaid family leave rights than are afforded by FMLA," it is not required to do so. 29 C.F.R. § 825.700(a).

[8] Lorentz lists other supposed evidence of retaliatory intent, including Bachmann's reaction to her request for leave, his calling her to inquire when she would return to work, and his reminder to Lorentz that she had no PTO left. This evidence appears to relate to Lorentz's claim that Alcon interfered with her substantive FMLA rights. Lorentz has not appealed the district court's dismissal of that claim and we do not find that the remarks show that Alcon's reason for terminating her was pretextual.

No. 13-20049

her 2007 performance review that were critical of her performance. These included the need to better document her call activity, the timeliness of her reporting and completion of administrative tasks, and conflicts between her personal obligations and work performance.

The same problems continued to plague her in the subsequent 2008 performance review. That review also commented on the need for more consistent and documented reporting. It also noted her lack of good communication. Overall, it found her to have performed below expectations. Comparing the two reports, it is clear that, contrary to Lorentz's assertions, her performance problems arose long before she ever went on FMLA leave.

While generally asserting that she complied with her position's administrative requirements, she does not refute the many specific documented infractions. These included the late filing of three weekly reports, failure to submit documentation of calls, tardy expense reports, unplanned PTO, and being late to pick up Bachmann during a field visit. Perhaps in an effort to divert attention from her administrative deficiencies, Lorentz draws attention to Vlaanderen's statement during the September 10 meeting that "[t]he bottom line . . . [is] what did you do today to get that extra lens implanted tomorrow. . . . That's really all I care about." Lorentz's argument appears to be that because she exceeded Alcon's sales quota, she could not be terminated for failing to complete comparably less-important administrative tasks. Aside from Alcon's legitimate interest in seeing Lorentz complete her administrative duties in a timely manner, Vlaanderen made clear that Lorentz could not ignore other parts of her job merely by keeping her sales up. At the September 10 meeting, Vlaanderen told her that "I'm not saying that you had to turn the [sales] numbers around. . . . I'm saying that the activities and the things that we want you to do on a daily basis are not getting done." Lorentz has failed to show that she was not deficient in her work, or that Alcon was unconcerned with her

10

failure to complete what she terms "minor administrative tasks," and thus has failed to establish pretext on these grounds.  *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) (noting that even an incorrect belief that an employee's performance is inadequate can constitute a legitimate, nondiscriminatory reason for an employment decision, and that evidentiary disputes concerning job performance are insufficient to show that a proffered justification is unworthy of credence).

## C.    Less Favorable Treatment

Finally, Lorentz argues that she received less favorable treatment than other employees.  *See Vaughn*, 665 F.3d at 637 (pretext may be shown "where an employer treats one employee more harshly than other 'similarly situated' employees for 'nearly identical' conduct").  Lorentz broadly asserts that, upon returning from FMLA leave, Bachmann and Vlaanderen imposed numerous additional administrative duties on her.  She cites the September 17 letter that required her to be in the field without exception, make three calls per business day to targeted surgeons, and prepare planned call reports a week in advance. However, she acknowledges that "administrative requests varied" among employees and "[i]t just depended on your manager."  She also skips over her lengthy history of sub-par performance, which led to the additional supervision, institution of a PIP, and ultimately her termination.

Lorentz also does not identify similarly situated individuals who had the same performance deficiencies but were not subjected to additional administrative duties.  While she points to her replacement, Brook F., who allegedly performed below expectations, and was not placed on a PIP or terminated, Brooke F. was supervised by Bachmann for only a short period of time.  *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) ("Employees with different supervisors . . . generally will not be deemed similarly situated.").    Lorentz also identifies Amanda Nissley and Kristin

Kepreos, both of whom went on FMLA leave and subsequently left Alcon's employ. Like Lorentz, Nissley was put on a PIP after returning from FMLA leave. Unlike Lorentz, she was never supervised by Bachmann. *See id.* Kepreos was investigated for misappropriating company funds shortly after she returned from FMLA leave, and was, like Lorentz, terminated. But Kepreos was not supervised by Bachmann when she took FMLA leave or when she was terminated. *See id.* Her situation further differs from Lorentz's in that Lorentz was terminated for persistent performance deficiencies, whereas Kepreos was terminated for alleged malfeasance. *See Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004) (employees misconduct must have been "nearly identical").

Accordingly, none of the individuals Lorentz identifies are sufficiently similar to Lorentz to demonstrate that she either was treated less favorably, or that Alcon generally retaliated against employees who took FMLA leave. She thus has failed to meet her burden of showing pretext.

## IV. CONCLUSION

Because Lorentz has failed to show that Alcon's reason for terminating her was pretextual, the district court's grant of summary judgment is AFFIRMED.