In the

# United States Court of Appeals

### For the Seventh Circuit

————————

No. 07-2166

DIEDRE TOWNSEND-TAYLOR and RONNIE TAYLOR,

*Plaintiffs-Appellants*,

*v.*

AMERITECH SERVICES, INC.,

*Defendant-Appellee*.

————————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05-C-0952—**Rudolph T. Randa**, *Chief Judge*.

————————

ARGUED JANUARY 14, 2008—DECIDED APRIL 29, 2008

————————

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiffs, a married couple, sued their former employer, Ameritech, for violation of the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.* Both Taylors had a record of absenteeism, and as a result of the denial of their retroactive applications for family leave lost their jobs. The district court granted summary judgment for Ameritech.

Ameritech has delegated the processing of its employees' FMLA claims to an entity called the FMLA Processing

Unit (FPU for short), which is located in Texas, although the plaintiffs worked for Ameritech in Wisconsin. (Whether FPU is an independent firm or is affiliated in some way with Ameritech is unclear, but is not relevant to our analysis.) An Ameritech employee who requests FMLA leave is given a "Certification of Health Care Provider" form, which contains the employee's name and a bar code that translates his social security number into symbolic language that protects the employee's privacy. The employee is told that his doctor must submit the completed form within 15 days to FPU in San Antonio, either by fax or by mail. Requiring submission within 15 days is permissible "unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts." 29 C.F.R. § 825.305(b). In effect, the quoted language authorizes a defense of equitable tolling. *Rager v. Dade Behring, Inc.*, 210 F.3d 776, 778-79 (7th Cir. 2000); see also *Peter v. Lincoln Technical Institute, Inc.*, 255 F. Supp. 2d 417, 441-43 (E.D. Pa. 2002). Furthermore, the employer may not "interfere with…the exercise of or the attempt to exercise, any right provided" the employee by the FMLA. 29 U.S.C. § 2615(a)(1). (Here the parallel is to equitable estoppel.) Although not required to do so, Ameritech allows its employees 20 days to submit the certification before it will deem the filing untimely.

Mr. Taylor missed several days of work to care for his child, who was suffering from an infection. When he returned to work on May 3, 2004, his supervisor gave him the certification form, and when by May 24 FPU had not received the form from him it sent him a notice of denial. But the notice added that he would have 15 more days within which to submit proof of extenuating circumstances for his failure to file the certification on time. Within the 15-

day period for proof of extenuating circumstances, FPU received from the child's doctor a letter which stated that the doctor had "filled out FMLA papers for this occurrence on at least 3 separate occasions and either faxed them to the [Ameritech] office or gave them directly to the parents." FPU had no record of having received any such communication either by fax or from the parents. Taylor had for unknown reasons given the doctor a certification form to fill out that had his wife's name and social security bar code imprinted on it, and he speculates that as a result the repeated faxings by the doctor had been lost by FPU and that this was a case of "interference" with FMLA rights because Ameritech should have warned employees about the importance of the bar code and hence the noninterchangeability of certification forms that had different employees' names imprinted on them. Taylor had crossed out his wife's name and written in his own name and his social security number; but the bar code remained, unaltered.

It can be "interference"—or, what amounts to the same thing, a basis for postponing the submission deadline by operation of the doctrine of equitable estoppel—to provide an employee with misleading instructions that cause him to miss a critical deadline for seeking FMLA leave. *Rager v. Dade Behring, Inc.*, *supra*, 210 F.3d 776, 778-79; *Harcourt v. Cincinnati Bell Telephone Co.*, 383 F. Supp. 2d 944, 959-61 (S.D. Ohio 2005); *Peter v. Lincoln Technical Institute, Inc.*, *supra*, 255 F. Supp. 2d at 443-44; 29 C.F.R. § 825.305(b). But this is not such a case. There was nothing misleading about the form. The form is stamped with an employee's name as well as a bar code, and an employee should know better than to submit a request for leave on another employee's form, even if the other employee is the person's

spouse. There is a limit to how many warnings an employer must encumber its forms with.

In any event, Mr. Taylor's speculation as to why FPU did not receive the completed form is unsupported. FPU's data-processing system scans the completed form when it is received and routes it to the file of the employee whose social security number is recorded in the bar code on the form. So if the doctor did fax the form three times, it would have been filed under Mrs. Taylor's name. But a search of that file did not turn up Mr. Taylor's form. Taylor refers repeatedly to a "known bar code problem." The record contains no evidence of such a problem. (The plaintiffs' brief is replete with such unsubstantiated factual assertions.)

Although the doctor said not that he had faxed the form but that he had either faxed it or given it to Mr. Taylor, it is hardly likely that he handed the same form to the parents three times. So why was a copy of the completed form never found in FPU's files? And did the doctor really fax the same form three times? Why would he do that? Was his fax machine broken? Was the fax line at FPU continuously busy? No explanation is suggested for the miscommunication. It is a great mystery; but Taylor does not contend that he complied with Ameritech's procedures for applying for FMLA leave within the 15-day period. For he gave the doctor the wrong form, and the doctor's "three faxes" letter did not explain or justify the delay. Compare *Kauffman v. Federal Express Corp.*, 426 F.3d 880, 885-87 (7th Cir. 2005).

He contends instead that FPU (or Ameritech, which concedes that it cannot shirk its responsibilities under the Act by outsourcing the processing of FMLA applications) should have given him a chance to rectify the deficiencies

in his attempt to excuse his failure to comply with the May 24 deadline—a chance to get a more informative letter from his doctor, for example. The company's failure to give him that chance, he argues, interfered with his rights under the FMLA. But that is stretching the concept of "interference" too far, and would make deadlines ineffectual. Every time an employee submitted deficient proof of extenuating circumstances for his failure to meet the filing deadline, his employer would be obliged to give him more time to make up the deficiency. This would mean that "an employer could never set a real deadline for the return of a medical certification. In effect, whenever an employee failed to return a medical certification within the appropriate time period, the employer would be required to notify the employee of that fact and provide the employee with an opportunity to cure the deficiency by allowing the employee to submit the certification within a new, extended deadline—a scenario that could, in theory, repeat itself ad infinitum. The bottom line, therefore, would be that the concept of a 'deadline' under § 825.305(d) would have no meaningful significance and no actual consequences. This would, in effect, create an imbalance where the 'legitimate interests of employers' [would] no longer receive the protections that Congress presumably intended to provide when it enacted the FMLA." *Urban v. Dolgencorp of Texas, Inc.*, 393 F.3d 572, 577 (5th Cir. 2004). See also *Novak v. MetroHealth Medical Center*, 503 F.3d 572, 579 (6th Cir. 2007). Taylor was given a "reasonable opportunity" to cure the deficiency; no more was required. See 29 C.F.R. § 825.305(d).

He also argues that Ameritech interferes with FMLA rights by requiring that the completed form be faxed

or mailed by the doctor, rather than permitting the applicant to do the sending. But such permission would facilitate fraud. The applicant might forge a letter from a doctor, or, after receiving the doctor's letter, embellish it before forwarding it to the employer. Nothing in the statute forbids an employer to adopt reasonable, nonburdensome measures for preventing fraud. Cf. *Conroy v. New York State Dept. of Correctional Services*, 333 F.3d 88, 100-02 (2d Cir. 2003); *Transport Workers Union of America, Local 100, AFL-CIO v. New York City Transit Authority*, 341 F. Supp. 2d 432, 443-44, 447-49 (S.D.N.Y. 2004). Reasonable such measures are not *interferences* with rights.

Communications do, though, go astray from time to time without fault by the employee. But he can protect himself by checking with FPU within the initial 20-day deadline to make sure that the completed form has arrived. If it has not arrived, he can obtain an extension of time sufficient to enable him to assure FPU's receipt of the form. If his doctor does not cooperate—suppose he's on vacation and as a result unable to submit the medical certification in time, as in *Uema v. Nippon Express Hawaii, Inc.*, 26 F. Supp. 2d 1241 (D. Haw. 1998)—that would be an extenuating circumstance that could excuse missing the deadline. See also *Peter v. Lincoln Technical Institute, Inc.*, *supra*, 255 F. Supp. 2d at 441-43; *Toro v. Mastex Industries*, 32 F. Supp. 2d 25, 29-30 (D. Mass. 1999).

We turn to Mrs. Taylor's claim. She was out of work for several days because of a problem with her back, and upon her return was given the certification form for her doctor (a different one from the child's doctor) to fill out. She waited 12 days after receiving the form to give it to her doctor, who did not get the completed form to FPU for another 9 days, with the result that Mrs. Taylor missed the dead-

line. She too was given 15 more days to establish extenuating circumstances, and during that period the doctor explained that delays are sometimes caused by her being in her office only two days a week. Mrs. Taylor had been taking a chance by waiting 12 days to submit the form to her doctor, knowing of the 20-day deadline—and in fact thinking the deadline only 15 days, so she had to know she was skating on very thin ice.

Her only explanation for the delay is that the day on which she submitted the form was her first day off work. She stated in her deposition that she could not have submitted the form earlier because she thought the clinic where her doctor works is open from 8 a.m. to 4:30 p.m and that her shift was either 8 a.m to 4:30 p.m, or 8:30 am to 5 p.m. Since she was already in trouble with her employer over absences, she would naturally have been reluctant to take time off from work to go to the clinic. But she also stated in her deposition that she didn't remember the clinic's hours, and further that she thought the clinic was open as early as 7 a.m. for tests, in which event she could have left the form for the doctor at the clinic on her way to work.

Moreover, she could not reasonably have believed that the overlap between her hours and the clinic's hours meant that the deadline on her submitting the form would be whatever day happened to be the first day she was off work. Faced with the overlap in hours, she should have called the clinic to verify its hours, explained her inflexible work schedule, and made arrangements for getting the form to her doctor. By waiting as long as she did she made herself hostage to whatever delays might occur in the transmission of the completed and signed form to FPU.

Although Ameritech's response to Mrs. Taylor's missing the deadline by only one day was harsh, hers was a case of the last straw. She had a history of failed attempts to justify absences as being authorized by the FMLA. Both Taylors were problem employees, and Ameritech was not required to exhibit more patience than the law and its own rules required. The law imposes a duty of diligence, with which Mrs. Taylor failed to comply, on any applicant for FMLA benefits who seeks a waiver of the deadline for submission of the application.

In any event it is most unlikely that the back condition that precipitated her application for FMLA leave was a "serious health condition" within the meaning of the statute, 26 U.S.C. § 2612(a)(1)(D), which was the only ground for her requesting FMLA leave. The regulation defining the term requires, so far as pertains to this case, that the applicant either be incapacitated for more than three consecutive days from working, or, without regard to length of time, be incapacitated by or under treatment for a "chronic serious health condition." 29 C.F.R. §§ 825.114(a)(2)(i), (iii). There is no evidence of a chronic condition, and it appears that she missed only three days of work.

Mrs. Taylor also argues that she was fired in retaliation for attempting to exercise her rights under the FMLA. There is no evidence of that. She was fired for unexcused absences.

AFFIRMED.