**Stacy CRANE, Plaintiff**

v.

**GORE DESIGN COMPLETION, LTD. and Melissa Trevino, Defendants.**

Civil No. 5:12–CV–925–OLG.

United States District Court, W.D. Texas, San Antonio Division.

Signed March 24, 2014.

Michael V. Galo, Jr., Galo Law Firm, P.C., San Antonio, TX, for Plaintiff.

Cora C. McGowan, Donna K. McElroy, Cox Smith Matthews Incorporated, San Antonio, TX, for Defendants.

## ORDER

ORLANDO L. GARCIA, District Judge.

Plaintiff Stacy Crane sued her former employer, Defendant Gore Design Completion, Ltd., and her former supervisor, Defendant Melissa Trevino, for demoting and then firing her in alleged violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* Defendants have moved for summary judgment (docket no. 21). After careful consideration, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion.

## I. Background

### A. Factual Background [1]

Defendant Gore Design Completion, Ltd. ("Gore") designs, manufactures, installs, and maintains aircraft interiors. In October 2010, Plaintiff Stacy Crane began working with Gore as a contract employee. In December 2010, Plaintiff was hired as a full-time regular employee and assigned the position of office manager. In this position, Plaintiff oversaw two receptionists, arranged travel for all program managers and other employees, helped with special events, arranged customer travel, completed expense reports, and performed a variety of other tasks. In the spring of 2011, Defendant Melissa Trevino became Plaintiff's supervisor.

In early July 2012, Plaintiff became very ill. On Thursday, July 5, 2012, she missed work with a sore throat. On July 6, Plaintiff was again absent. On Monday, July 9, Plaintiff came to work but left because she was again feeling ill. Thereafter, Plaintiff remained out of work until July 27, 2012, when she returned to work. Ultimately, Plaintiff was diagnosed with fibromyalgia. During the course of her illness Plaintiff suffered debilitating fatigue, pain, and dizziness. These symptoms made her unable to perform daily living activities, including caring for her children and driving.[2]

During the course of Plaintiff's absence, she visited various medical providers. On July 11, Plaintiff was unable to visit with her primary care physician, Dr. Marcia Hugen, and instead visited with another doctor at the Texas Med Clinic.[3] By July 15, Plaintiff was still feeling ill and went to the Christus Santa Rosa Emergency Room, where she was attended by an emergency room physician.[4] Plaintiff was treated for hypothyroidism and discharged. On July 17, Plaintiff was able to visit with her primary care physician, Dr. Hugen, at her office. On July 19, Plaintiff

1. The Court states the facts in the light most favorable to Plaintiff, the party responding to the motion for summary judgment. *See Laredo Rd. Co. v. Maverick Cnty., Tex.,* 389 F.Supp.2d 749, 750 (W.D.Tex.2005) (noting courts must view summary judgment evidence in the light most favorable to the non-moving party).

2. This diagnosis is listed on the FMLA certification form completed for Plaintiff's husband, Michael Crane. (Docket No. 24, Ex. 3–A). Mr. Crane requested and received FMLA leave from his employer to care for Plaintiff while she was ill.

3. Plaintiff states that her primary care physician at this time was Dr. Eric Bernstein but that she typically saw Dr. Marcia Hugen. (Pl. Dep., Docket No. 24, Ex. 1.) For simplicity, the Court refers to Dr. Hugen as Plaintiff's primary care physician. The doctor that Plaintiff visited on July 11 was Dr. Luke Galindo.

4. Plaintiff asserts that she was treated by Dr. Amy R. Martin. (Pl. Aff. ¶ 9, Docket No. 24, Ex. 2.) The Court is unable to decipher the physician's signature on the medical records. (Docket No. 24, Ex. 8.) In the corner, the records are stamped "Martin, Guerrero, MD." (*Id.*) Regardless, whichever doctor treated Plaintiff on July 15 was not her primary care physician.

returned to the emergency room and was treated by an unknown physician.[5] She was diagnosed with acute pharyngitis, prescribed medication, and discharged. A note on the medical records indicates that Dr. Hugen was consulted and that she would follow up with Plaintiff at her office. On July 21, Plaintiff again returned to the emergency room, where she remained until the morning of July 24. During this stay, Plaintiff was attended by an emergency room physician.[6] The physician diagnosed Plaintiff with acute pharyngitis, a gastric ulcer, dehydration, nausea, and vomiting. Plaintiff was prescribed medication, and upon discharge, she was instructed to follow up with her primary care physician in a week. The doctor also instructed Plaintiff to take two or three days off from work to rest. After two days, Plaintiff returned to work on July 27.

During the course of Plaintiff's illness and time away from work, she continually updated Defendants on her condition and possible return. This included almost daily contact with Ms. Trevino, Plaintiff's supervisor.[7]

On July 15, 2012, Plaintiff and Ms. Trevino conversed by text message. (Docket No. 24, Ex. 9.) Plaintiff informed Ms. Trevino that she was still feeling ill and was going to the emergency room. Ms. Trevino responded that she hoped Plaintiff would feel better. Later that day, Ms. Trevino forwarded the text message correspondence to Gerry Sheridan, Gore's director of finance at the time.[8] Ms. Trevino informed Mr. Sheridan that Plaintiff was set to miss her ninth day of work. Ms. Trevino concluded, "I think we need to terminate." (Id.) Mr. Sheridan responded, "I agree. It just does not quite ring true. Something off going on there. Anyway, 9 days on the trot is really too much." (Id.)

The next day, July 16, 2012, Ms. Trevino sent Plaintiff a text message stating that she needed a doctor's excuse for time off.[9] Ms. Trevino also states that she would send Plaintiff an FMLA certification, which would have to be filled out by her doctor and returned. On July 17, 2012, Gore employee Jose Rosales faxed an FMLA certification form to Plaintiff. Attached to the form was a notice of FMLA eligibility criteria and employee rights and responsibilities. The attached notice states that Plaintiff must return the certification form by July 31, 2012. Next to this date on the notice is the following statement: "If a certification is requested, employers must allow at least 15 calendar days from receipt of this notice; additional time may be required in some circumstances." The next sentence on the notice states, "[i]f sufficient information is not

---

**5.** Plaintiff asserts that she was treated by Dr. Akhtar Hussain. (Pl. Aff. ¶ 9.) The Court is unable to decipher the physician's signature on the medical records. The medical records are unstamped. (Docket No. 24, Ex. 13.)

**6.** The emergency room physician was Dr. Akhtar Hussain. (Docket No. 24, Ex. 14.)

**7.** Plaintiff references text messages sent to Ms. Trevino as early as July 5, 2013, but the record only contains copies of text messages sent on or after July 15, 2013. (See Pl. Aff. ¶ 7; Text Messages, Docket No. 24, Ex. 6.)

**8.** In his deposition, Mr. Sheridan states that he was Gore's director of finance. (Docket

No. 24, Ex. 11, at 4:18.) Plaintiff, however, repeatedly refers to Mr. Sheridan as Gore's chief operating officer. (See e.g., Response, at 2, 4, Docket No. 24.) Plaintiff appears to be mistaken as to Mr. Sheridan's position in 2012. Ms. Trevino asserts that from July 2011 to July 30, 2012, Gore did not employ a chief operating officer. (Trevino Aff. ¶ 5, Docket No. 21, Ex. E.)

**9.** The record suggests that Plaintiff's husband faxed the doctor's excuse to Ms. Trevino. (See Mr. Crane Aff. ¶ 4, Docket No. 24, Ex. 3; Doctor's Excuses, Docket No. 24, Ex. 5.)

provided in a timely manner, your leave may be denied."

On July 17, 2012, Plaintiff provided the FMLA certification form to her primary care physician, Dr. Hugen, when she visited Dr. Hugen at her office. The next day, Plaintiff called Dr. Hugen's office and again requested that the doctor fill out the form. On July 20 and 26, Plaintiff requested, yet again by telephone, that Dr. Hugen fill out the certification. In making these requests, Plaintiff spoke to Dr. Hugen; Dr. Hugen's nurse practitioner, Jennifer Lefner; and Dr. Hugen's office manager. Additionally, Plaintiff's husband requested that Dr. Hugen fill out both his and Plaintiff's FMLA forms.[10] Mr. Crane's requests to Dr. Hugen and her office staff included a phone call on July 22 and a phone call about a week later. Each time, Plaintiff and her husband were told that they would have to wait. Dr. Hugen would only complete the certification after Plaintiff visited with a specialist and Dr. Hugen received the specialist's diagnosis.

Plaintiff returned to work on July 27, 2012. Her certification was not completed by that time. Plaintiff had not been able to visit with a specialist.[11] Upon her return, Plaintiff asserts that she was ostracized by management and co-workers. Plaintiff was also removed from her previous position as office manager and assigned to the position of administrative assistant. In this role, Plaintiff no longer supervised the receptionists and only arranged travel for program managers and assisted customers on site or incoming.

By July 30, 2012, Dr. Hugen still had not completed the FMLA certification form. The July 31 deadline Gore imposed for the return of the form was approaching. Plaintiff emailed Ms. Trevino stating that she was waiting on her doctor to complete the certification and that she would follow up with her doctor when she visited on August 2.

On August 2, 2012, Plaintiff visited Dr. Hugen; however, Dr. Hugen still would not complete the FMLA certification because Plaintiff had not yet visited a specialist. Dr. Hugen referred Plaintiff to another specialist, a rheumatologist, and promised to write a letter to Gore explaining the delay.

That evening, Gore's director of finance, Gary Sheridan, emailed the company's president, Kathy Gore, recommending that Plaintiff be terminated due to her prolonged absence and failure to return her FMLA certification. In his email, Mr. Sheridan states that he spoke with Ms. Trevino earlier in the day. He also comments that, "[s]ince returning last Monday one would have expected [Plaintiff] would keep a relatively low profile given her extended absence. This has not been the case. Quite the contrary. Amongst other things she has been rude with [co-workers]. We will fill the vacancy asap, which should be a relatively straightforward task." (Docket No. 21, Ex. L.) Ms. Gore responded curtly, "[o]k just make sure

10. As mentioned, Mr. Crane requested and received FMLA leave from his employer to care for Plaintiff while she was ill. *See supra* note 2. Dr. Hugen's nurse practitioner, Ms. Lefner, eventually filled out Mr. Crane's certification. (Docket No. 24, Ex. 3–A.)

11. On July 23, Plaintiff was scheduled to visit an endocrinologist, but had to cancel that specialist appointment because she had been admitted to the hospital on her emergency room visit and was not released until the morning of July 24. (*See* Referral, Docket No. 24, Ex. 21); *see also supra* at 772 (describing Plaintiff's emergency room stay). Plaintiff was later referred to a rheumatologist, and she visited him on the first available appointment date. (*See* Referral, Docket No. 24, Ex. 21; Pl. Dep. 68:1–10).

[Plaintiff's new manager] knows what's going on." (*Id.*)

On August 3, 2012, Plaintiff reported for work. She spoke with Josie Rosales, who Gore had appointed as Plaintiff's contact person for FMLA questions. (*See* Notice, Docket 21, Ex. G; *see also* Trevino Dep., Docket No. 24, Ex. 10, at 33:24–34:5, 40:5–8.) Plaintiff informed Ms. Rosales, that Dr. Hugen had not completed the certification because she was waiting on the specialist's diagnosis. Ms. Rosales nodded her head in response. Shortly thereafter, Plaintiff met with Ms. Trevino. Ms. Trevino told Plaintiff that her employment was being terminated for unexcused absences. Plaintiff was then escorted from the premises by a security officer.

At some point after Plaintiff's termination, she visited the rheumatologist Dr. Hugen had referred her to on the first available appointment date. Afterwards, on September 12, 2012, Plaintiff met with Dr. Hugen and her nurse practitioner, Ms. Lefner. That day, Ms. Lefner filled out an FMLA certification form for Plaintiff's husband, who was then able to return the form to his employer. Mr. Crane's employer had requested certification regarding Plaintiff's illness since Mr. Crane had taken time off to care for his wife. Plaintiff asserts that she did not request or receive a completed certification form for herself since, by that time, her employment with Gore had been terminated.

## B. Procedural History

On October 1, 2012, Plaintiff filed her lawsuit against Gore and Ms. Trevino. She asserts that Ms. Trevino was Plaintiff's supervisor and made the decision to demote and then discharge her. Plaintiff asserts that both Gore and Ms. Trevino are liable for violating the substantive protections of the FMLA. Plaintiff also asserts that Defendants violated the anti-discrimination and anti-retaliation provisions of the FMLA by demoting her and then terminating her for using FMLA leave and complaining of her demotion.

Defendants filed a motion for summary judgment on all of Plaintiff's claims. (Docket No. 21). Defendants assert that Plaintiff's absences were not protected by the FMLA because Plaintiff did not return an FMLA certification within fifteen days, as requested. Defendants also assert that because Plaintiff's absences were not protected due to her failure to timely return certification, they could not have retaliated against her for using FMLA leave. Additionally, Ms. Trevino asserts that she is not an "employer" under the FMLA.

## II. Legal Standard

Summary judgment is proper when the evidence shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails ... to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir.2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

The court must draw reasonable inferences and construe evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to

create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice,* 369 F.3d 854, 860 (5th Cir.2004).

## III. Discussion

### A. Plaintiff's Claim for Substantive FMLA violations

The principal question in this case is whether Defendants are liable for firing Plaintiff after she failed to return her FMLA certification within fifteen days, as requested. Defendants have not otherwise challenged Plaintiff's eligibility for FMLA leave.

■ The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period ... [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). After a qualifying absence, the employer must restore the employee to the same position or a position comparable to that held by the employee before the leave. *Id.* § 2614(a)(1). An employer may not "interfere with restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. *Id.* § 2615(a). "Thus, employers have a prescriptive obligation under the FMLA—they must grant employees substantive rights guaranteed by the FMLA." *Chaffin v. John H. Carter Co., Inc.,* 179 F.3d 316, 319 (5th Cir.1999); *see Nero v. Indus. Molding Corp.,* 167 F.3d 921, 927 (5th Cir.1999).

An employer may request that an employee's FMLA leave be supported by a certification issued by the employee's health care provider. 29 U.S.C. § 2613(a). "The employee shall provide, in a timely manner, a copy of such certification to the employer." *Id.* The FMLA does not define "timely manner." Instead, the Act authorizes the Secretary of Labor to prescribe regulations necessary to carry out the FMLA. *Id.* § 2654; *see Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 86, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002) ("[The Secretary of the Department of Labor's] judgment that a particular regulation fits within [the FMLA] statutory constraint must be given considerable weight."). To this end, the Department of Labor has issued the regulation codified in 29 C.F.R. § 825.305(b), which provides, in its entirety:

> In most cases, the employer should request that an employee furnish certification at the time the employee gives notice of the need for leave or within five business days thereafter, or, in the case of unforeseen leave, within five business days after the leave commences. The employer may request certification at some later date if the employer later has reason to question the appropriateness of the leave or its duration. The employee must provide the requested certification to the employer within 15 calendar days after the employer's request, unless it is not practicable under the particular circumstances to do so *despite the employee's diligent, good faith efforts* or the employer provides more than 15 calendar days to return the requested certification.

29 C.F.R. § 825.305(b) (emphasis added). "Absent such extenuating circumstances, if the employee fails to timely return the certification, the employer can deny FMLA protections for the leave following the expiration of the 15–day period until a sufficient certification is provided. If the employee *never produces the certification,* the leave is not FMLA leave." *Id.* § 825.313(b) (emphasis added).

Here, Gore required Plaintiff to provide FMLA certification by July 31, 2012. Plaintiff does not dispute that Gore re-

quired the certification or that July 31, 2012 was 15 days after Gore's request.[12] Plaintiff asserts, however, that her certification was not due on July 31 because it was "not practicable under the particular circumstances to [provide the requested certification] despite [her] diligent good faith efforts." *See* 29 C.F.R. § 825.305(b). Plaintiff asserts that she was diligent in requesting the certification time and again from her primary care physician, Dr. Hugen; that she was diligent in notifying her employer of the delays she was facing; and that ultimately, Dr. Hugen's refusal to complete the certification by July 31 made it impracticable for her to provide FMLA certification to Gore. Gore responds that Plaintiff's efforts were not diligent, that Plaintiff did not communicate her alleged diligent efforts to Gore, and that even if Plaintiff's efforts were diligent and Plaintiff communicated her efforts to Gore, she never ultimately submitted a certification to Gore, as required.[13]

■ Courts across the country have considered the language of 29 C.F.R. § 825.305(b) as authorizing a defense of equitable tolling to extend the otherwise 15–day deadline to provide FMLA certification. *See e.g., Townsend–Taylor v. Ameritech · Services, Inc.,* 523 F.3d 815, 816 (7th Cir.2008); *Peter v. Lincoln Tech. Inst., Inc.,* 255 F.Supp.2d 417, 441–42 (E.D.Pa.2002). The Fifth Circuit, however, has not directly addressed when, or if, the tolling exception applies. Nevertheless, the Fifth Circuit has noted that FMLA regulations should not be implemented so as to create remedies not contemplated by the Act. *Lubke v. City Of Arlington,* 455 F.3d 489, 498 (5th Cir. 2006).

In *Urban v. Dolgencorp of Tex., Inc.,* 393 F.3d 572 (5th Cir.2004), *decision clarified on denial of reh'g,* 398 F.3d 699 (5th Cir.2005), the Fifth Circuit has shown how this instruction works in practice. There, the court considered 29 C.F.R. 825.305(d), which at the time required that if an "employer finds the certification form incomplete, the employer must advise the employee of the deficiency and provide the employee a reasonable opportunity to cure any such deficiency." *Urban,* 393 F.3d at 574.[14] The district court, whose decision was under review, determined that an incompletion notice was required even though the employee in the case never returned an original certification to his employer. The Fifth Circuit reversed, reasoning that requiring notice of incompletion, even when an employer never received an original certification, would "lead to results not contemplated by Congress when it enacted the FMLA." *Id.* at 577. The court recognized that "the stated pur-

---

12. The summary judgment evidence shows · that Gore's written notice requesting certification was faxed to Plaintiff on July 17, 2013. (Docket No. 21, Ex. G.); *see* 29 C.F.R. 825.305(a) (requiring an employer give written notice of a request for certification). Fifteen days after July 17, 2012 is August 1, 2012.

13. Defendants assert that Plaintiff is raising a new theory in response to their motion for summary judgment by relying on 29 C.F.R. § 825.305(b). Plaintiff responds in an opposed surreply that she has always asserted that her leave is FMLA-protected leave and that her argument for equitable tolling, pursu-

ant to 29 C.F.R. § 825.305(b), responds to Defendants' arguments attacking the classification of her leave as FMLA-protected. The Court agrees with Plaintiff, GRANTS her leave to file her surreply (docket no. 29), and further notes that Defendants recognized the importance of the issue of equitable tolling when questioning Plaintiff in deposition. *(See e.g.* Pl. Dep. 54:16–61:25 (questioning Plaintiff on her diligence in completing certification)).

14. The federal regulations have since been amended. Now the current equivalent regulation is found in 29 C.F.R. § 825.305(c).

pose of the FMLA [is] to 'balance the demands of the workplace with the needs of families' and 'to entitle employees to take reasonable leave for medical reasons' in a 'manner that accommodates the legitimate interests of employers.'" *Id.* (citing 29 U.S.C. § 2601(b)(1)-(3)). Reading the regulation to require notice even when the employee never returned an original certification would, "in effect, create an imbalance where the 'legitimate interests of employers' no longer receive the protections that Congress presumably intended to provide when it enacted the FMLA." *Id.*

On the other hand, the Fifth Circuit has affirmed the substantive protections given to employees. Relevant to this case, it has recognized that, "termination during the mandatory 15–day compliance period could itself be deemed [an] FMLA violation." *Saenz v. Harlingen Med. Ctr., L.P.,* 613 F.3d 576, 582 (5th Cir.2010); *see Lubke,* 455 F.3d at 496–97 (stating that 29 C.F.R. § 825.305(b) "requires" that the employer allow the employee at least 15 days to respond to the medical certification request).

■ Thus, mindful of the delicate balance between the "demands of the work place" and "the needs of families," 29 U.S.C. § 2601(b)(1), and also mindful of the general, statutory requirement that a certification be returned in "a timely manner," *id.* § 2613(a), the Court finds that equitable tolling may apply to extend the normal 15–day deadline to return certification required by 29 C.F.R. § 825.305(b). Keeping these same considerations in mind, the Court now considers whether an equitable exception applies in this case. Specifically, and with deference to the Department of Labor regulations, the Court considers whether it was "not practicable under the particular circumstances [for Plaintiff] to [provide Gore with her FMLA certification] despite [Plaintiff's] diligent,

good faith efforts." 29 C.F.R. § 825.305(b).

■ First, for equitable tolling to apply, Plaintiff must show that she diligently and in good faith pursued certification within 15 days of Gore's initial request. *See* 29 C.F.R. § 825.305(b). Courts considering diligent and good faith efforts in the context of 29 C.F.R. § 825.305(b) have generally found such efforts where an employee requests certification before the 15–day period expires and then follows up on that request. For instance, in *Chenoweth v. Wal–Mart Stores, Inc.,* 159 F.Supp.2d 1032 (S.D.Ohio 2001), the court considered diligence and good faith to be fact issues. There an employee immediately requested that a physician complete her certification. *Id.* at 1038. When the employee learned five days later that the physician could not complete her certification, she requested that an occupational therapist instead complete the certification. *Id.* Likewise, in *Peter v. Lincoln Tech. Inst.,* 255 F.Supp.2d 417 (E.D.Pa.2002), an employee dropped a certification form off to her physician the day she went on disability leave and then followed up "at least three times and possibly as often as twice each week" until the form was completed after the 15–day deadline. *Id.* at 425. The *Peter* court concluded that, even though the form was returned after 15 days, a jury could reasonably apply equitable tolling to find that the certification was timely submitted. *Id.* at 441.

In contrast, courts denying equitable tolling have done so where an employee only followed up with his doctor after the 15–day deadline had passed, *see e.g., Young v. Russell Corp.,* 2:08–CV–148–WHA, 2008 WL 5412782, at *3 (M.D.Ala. Dec. 29, 2008); or where an employee was granted multiple extensions and first pursued certification well after the original 15 days had passed, *see Baldwin–Love v.*

*Elec. Data Sys. Corp.*, 307 F.Supp.2d 1222, 1234 (M.D.Ala.2004); or where an employee was denied a certification by two doctors after making telephone requests, but did not pursue certification further, and did not ask for an extension from her employer, *see Brookins v. Staples Contract & Commercial, Inc.*, CIV. A. 11–11067–RWZ, 2013 WL 500874, at *3 (D.Mass. Feb. 12, 2013).

Here, Plaintiff asserts that she provided the FMLA certification form to her primary care physician, Dr. Hugen, when she visited her office the day, or the day after, she received the form. Plaintiff followed up with Dr. Hugen's office before the 15–day deadline expired at least three times. Additionally, Plaintiff's husband requested that Dr. Hugen fill out both his and Plaintiff's FMLA forms. He followed up at least twice on this request, and at least once before the deadline. Furthermore, during the relevant time, Dr. Hugen was responsible for Plaintiff's overall care. She consulted with at least one of Plaintiff's emergency care doctors, and at least one of Plaintiff's emergency care doctors instructed Plaintiff to follow-up with Dr. Hugen. The FMLA certification form Gore provided Plaintiff included questions on the probable duration of Plaintiff's medical condition and Plaintiff's ability to perform the functions of her job. (Docket No. 21, Ex. C); *see* 29 U.S.C. § 2613(b) (listing the requirements for certification). Dr. Hugen was in the best, if not only, position to answer the certification questions on the form. Therefore, based on the totality of the evidence, the Court finds that a jury could reasonably conclude that Plaintiff diligently and in good faith pursued certification before the 15–day deadline expired. *See* 29 C.F.R. § 825.305(b).

Next, tolling in this case requires Plaintiff to have kept Gore appraised of her difficulty in obtaining certification within the 15–day deadline. As the Fifth Circuit has noted, the FMLA is a statute "that requires cooperation from the employer *and* employee. After all, the ultimate underlying purpose of the FMLA is to accommodate a particular medical circumstance." *Mauder v. Metro. Transit Auth. of Harris Co., Tex.*, 446 F.3d 574, 582 (5th Cir.2006) (emphasis in the original); *see* 29 U.S.C. § 2601(b)(1) ("[T]he purpose of the [FMLA is] to balance the demands of the workplace with the needs of families."). District courts likewise have insisted on the need for employee communication. *See Washington v. Fort James Operating Co.*, No. CIV.99–1300–JO, 2000 WL 1673134, at *5 (D.Or. Nov. 7, 2000) (noting that good faith requires "at least that the employee contact his employer by telephone and make it aware that he is unable to return his certification before the deadline."); *Brookins*, 2013 WL 500874, at *3 (denying equitable tolling where an employee did not keep her employer appraised of her difficulties in obtaining certification). Moreover, the importance of communication is underscored by the Department of Labor's commentary to its regulations. 73 Fed.Reg. 67,934 (Nov. 17, 2008). Regarding equitable tolling, the commentary notes that "[i]n all cases, it is imperative that employees communicate to their employers the efforts they are making to secure the completed medical certification." *Id.* at 68,011.

Though not always possible, here, Plaintiff certainly could have, and did, communicate with Gore the difficulties she had in completing her FMLA certification.[15] At the very least, Plaintiff emailed Ms. Trevi-

---

15. In some cases of extreme emergency, an employee may not be physically able to communicate within 15 days. *Cf.* 29 C.F.R. § 825.313 (giving as an example of a situation warranting equitable tolling a "case of medical emergency").

no on July 30, 2012, before the 15–day deadline expired. In her email she reported that she submitted the certification form to her doctor, who had still not completed the form. She also promised to follow up with the primary care physician, Dr. Hugen, on August 2, 2012 and "once a firm diagnosis is given." (Docket No. 24, Ex. 20). On August 2, 2012, Plaintiff visited with Dr. Hugen, who referred her to a rheumatologist. That day, Dr. Hugen purportedly refused to complete the FMLA certification until Plaintiff visited with the rheumatologist and was given a firm diagnosis. On August 3, Plaintiff reported to Gore employee Josie Rosales her conversation with Dr. Hugen and the reason for further delay in returning her certification. Ms. Rosales was the employee Gore appointed to communicate with Plaintiff if Plaintiff had questions regarding FMLA certification. Based on this email and conversation, a reasonable jury could find that Plaintiff communicated with Gore the difficulty she had in obtaining FMLA certification both within the 15–day deadline and shortly thereafter.

Next, equitable tolling requires that it not be practicable for an employee to return certification within 15 days. Courts focusing on practicability have looked to unique circumstances causing impracticability. For example, in *Uema v. Nippon Exp. Hawaii, Inc.*, 26 F.Supp.2d 1241 (D.Haw.1998), an employee's doctor had gone on vacation for two weeks right around the time that the employee submitted his certification to his doctor. *Id.* at 1248. The *Uema* court concluded that a reasonable jury could find that the employee's failure to timely provide medical certification was impracticable due to his doctor's unavailability. *Id.* In *Toro v. Mastex Indus.*, 32 F.Supp.2d 25 (D.Mass.1999), an employee taking time off to care for his wife sought certification regarding his wife's mastectomy in Colombia. *Id.* at 27.

The court held that the need to send the certification form to and from a foreign country could provide a basis for equitable tolling. *Id.* at 30–31. The Department of Labor has additionally weighed in on impracticability by noting in its commentary to its regulations that employers must "be mindful that employees must rely on the cooperation of their health care providers." 73 Fed.Reg. 67,934 (Nov. 17, 2008). Therefore, "employees should not be penalized for delays over which they have no control." *Id.*

Here, Plaintiff's physician refused to complete the certification form within 15 days since Plaintiff had not yet seen a specialist. Plaintiff argues that her illness, repeated emergency room visits, and unavailability of the specialist until after the 15–day deadline passed, made it impracticable for her to fulfill her physician's request and return her certification within 15 days. The Court finds Plaintiff's argument compelling. Accordingly, a fact issue exists over whether it was not practicable under the particular circumstances for Plaintiff to provide certification to Gore within 15 days of Gore's request.

Finally, Defendants argue that Plaintiff's leave cannot be FMLA leave because she never submitted FLMA certification. While, the Department of Labor regulations state that "[i]f an employee never produces the certification, the leave is not FMLA leave," 29 C.F.R. § 825.313(b), this regulation does not require that an employee submit certification if that that employee is fired before the deadline to submit certification expires. The Fifth Circuit has stated that "termination during the mandatory 15–day compliance period could itself be deemed [an] FMLA violation." *Saenz v. Harlingen Med. Ctr., L.P.*, 613 F.3d 576, 582 (5th Cir.2010). By implication, if the deadline is expanded because of equitable

tolling, termination within the expanded deadline could likewise be an FMLA violation. *See* 73 Fed.Reg. 68,036–37 (commenting that an employee's certification is not untimely until after the 15–day deadline, as extended if necessary, expires). Here, Plaintiff was unquestionably ill. In fact, her husband submitted FMLA certification based on Plaintiff's illness to his employer. Plaintiff, however, never submitted an FMLA certification to Gore because she believed that to do so after termination would be futile. The Court agrees. If a jury concludes that equitable tolling applies, Plaintiff's failure to submit FMLA certification was reasonable and does not cause her leave to be unprotected.

In conclusion, the Court finds that a reasonable jury could conclude that Plaintiff was fired within the time period she had to submit FMLA certification. *See* 29 U.S.C. § 2613(a); 29 C.F.R. § 825.305(b). Accordingly, Defendants are denied summary judgment on Plaintiff's claim that Defendants violated her substantive FMLA rights by terminating her employment.

█ In addition to termination, Plaintiff also asserts that Defendants violated her substantive FMLA rights by demoting her after she took FMLA-protected leave. The FMLA makes it unlawful for an employer to "interfere with restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. *Id.* § 2615(a). In practice, this language entitles an employee, upon returning from FMLA leave, be returned to the same position the employee held when leave commenced, or to an "equivalent position with equivalent benefits, pay, and other terms and conditions of employment." 29 C.F.R. § 825.214. The Department of Labor regulations define "equivalent position" as:

[O]ne that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantial equivalent skill, effort, responsibility, and authority.

*Id.* § 825.215.

Plaintiff asserts that when she returned from leave she was removed from her position as office manager and assigned the position of administrative assistant. As administrative assistant, she no longer supervised the receptionists, she only arranged travel for program managers, and she only assisted those customers on site or incoming. Defendants assert, without explaining why, that Plaintiff was reassigned because in July 2012 Gore reorganized the duties of the office manager position. Despite this assertion, a jury could reasonably conclude that Plaintiff's positions were not equivalent and that Gore demoted Plaintiff for taking FMLA-protected leave. Accordingly, Defendants are denied summary judgment on Plaintiff's claim that Defendants violated her substantive FMLA rights by demoting her.

**B. Plaintiff's Claim for FMLA Retaliation**

█ In addition to creating a series of entitlements or substantive rights, the FMLA also protects employees from retaliation or discrimination from exercising their rights under the FMLA. *Mauder,* 446 F.3d at 580; *see* 29 C.F.R. § 825.220(c) ("The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."). To make a prima facie showing of retaliation under the FMLA, Plaintiff must show that: "(1) she was protected

under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave." *Hunt v. Rapides Healthcare Sys., LLC,* 277 F.3d 757, 768 (5th Cir.2001); *see Lorentz v. Alcon Labs., Inc.,* 535 Fed.Appx. 319, 322 (5th Cir.2013) (reaffirming that FMLA retaliation claims are analyzed under the familiar *McDonnell Douglas* burden-shifting framework). If Plaintiff succeeds in making a prima facie case, the burden then shifts to Defendants to articulate a legitimate or nonretaliatory reason for the employment action. *Hunt,* 277 F.3d at 768. Once Defendants have done so, Plaintiff must show by a preponderance of the evidence that Defendants' reason is a pretext for retaliation. *Id.*

■ Here, Defendants do not dispute that Plaintiff was an employee covered by the FMLA. Further, Defendants do not dispute that Plaintiff's termination was an adverse employment decision. As discussed above, whether Plaintiff's change of position from office manager to administrative assistant is an adverse employment decision is a fact issue.

To make a prima facie showing of retaliation, Plaintiff must show that she was treated less favorably than an employee who had not requested leave under the FMLA or she must show that the adverse

decision was made because she took FMLA leave. Here, Defendants assert that Plaintiff cannot make this showing because her leave was unprotected since she did not return her FMLA certification within 15 days. As explained above, a jury must determine whether Plaintiff's leave was FMLA-protected. If her leave was protected, Plaintiff has made a showing of prima facie retaliation since she suffered at least one adverse employment decision (termination) after asking for and taking FMLA leave.

■ If Plaintiff makes a prima facie showing, Defendants must then articulate a legitimate or nonretaliatory reason for causing Plaintiff to suffer an adverse employment decision. Regarding termination, Defendants have offered no other reason for terminating Plaintiff other than her taking leave, which is not a legitimate or nonretaliatory reason if the leave is FMLA-protected. Since Defendants have not offered a legitimate or nonretaliatory reason for terminating Plaintiff, Plaintiff is not required to prove pretext regarding Defendants' stated reason for termination. Accordingly, legitimate fact issues exist regarding Plaintiff's claim for FMLA retaliation.[16]

## C. Plaintiffs Claims against Defendant Trevino

■ Finally, Defendant Trevino asserts that she cannot be liable for FMLA viola-

---

**16.** The Court also notes that a jury must determine whether Plaintiff suffered an adverse employment decision by being returned to the position of administrative assistant, rather than to her original position of office manager. If a jury finds this to be an adverse employment decision, Defendants have articulated a legitimate or nonretaliatory reason for changing Plaintiff's position to administrative assistant, namely that Gore reorganized the position of office manager. However, Plaintiff has raised a legitimate fact issue regarding

pretext by pointing to an email exchange on July 15, 2012, between Ms. Trevino and Gerry Sheridan, Gore's director of finance, in which the two discuss terminating Plaintiff's employment for Plaintiff taking excessive leave. A jury could reasonable find that Plaintiff's change in position was not made for any legitimate business purpose, but rather to facilitate Plaintiff's departure, which would be inappropriate if Plaintiff's leave was FMLA-protected.

tions because she is not an "employer" as defined by the Act. The FMLA defines "employer" to mean "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i). . The term includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). This definition is substantially identical to the definition of "employer" under the Fair Labor Standards Act ("FLSA"), and, accordingly, courts look to FLSA precedent when applying the FMLA. *See Modica v. Taylor,* 465 F.3d 174, 186 (5th Cir.2006); *Harville v. Texas A & M Univ.,* 833 F.Supp.2d 645, 654 (S.D.Tex.2011).

When taken out of context, the phrase "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer," potentially implicates a broad swath of low- to mid-level supervisors. *See Donovan v. Agnew,* 712 F.2d 1509, 1513 (1st Cir.1983) ("Taken literally and applied in this context [the FLSA definition of "employer"] would make any supervisory employee, even those without any control over the corporation's payroll, personally liable for the unpaid or deficient wages of other employees"); *Dole v. Cont'l Cuisine, Inc.,* 751 F.Supp. 799, 802 (E.D.Ark.1990). However, as noted by the First Circuit, "[i]t makes more sense ... to interpret that language as intended to prevent employers from shielding themselves from responsibility for the acts of their agents." *Agnew,* 712 F.2d at 1513.

The Supreme Court and Fifth Circuit have not used the FMLA/FLSA definition of "employer" to hold to low- to mid-level supervisors liable as FMLA "employers."

Instead, those courts have applied the language only to persons or entities exercising almost total control over the employees of a nominally separate entity. For example, in *Falk v. Brennan,* 414 U.S. 190, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973), the Supreme Court found a partnership managing apartment complexes to be an FLSA "employer" of maintenance worker, who were employed directly by apartment complex owners. *Id.* at 195, 94 S.Ct. 427. The Court held that, even though the employees were not directly employed by the management partnership, the partnership's "managerial responsibilities at each of the buildings, which gave it substantial control of the terms and conditions of the work of these employees," made the partnership an "employer" under the FLSA. *Id.*

Likewise, in *Donovan v. Grim Hotel Co.,* 747 F.2d 966 (5th Cir.1984), the Fifth Circuit held that an individual, who founded, controlled, and profited from hotel businesses was an FLSA "employer" along with the hotel enterprise itself. *Id.* at 971–72. The Fifth Circuit approvingly cited to the First Circuit for the proposition that "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Id.* at 972 (citing *Agnew,* 712 F.2d at 1511). The Fifth Circuit pointed to "the economic realities" of employment to uphold a verdict against the individual defendant, who "independently exercised control over the work situation." *Id.* Specifically, the record showed that the individual defendant began and controlled the hotel corporations; held their purse-strings and guided their policies; was the only one who could authorize compliance with the FLSA; personally selected the manager of every hotel; and travelled to Texas to inspect the

hotels and solve major problems. *Id.* "In short, the hotels, speaking pragmatically, were [the individual defendant's] and functioned for the profit of his family." *Id.*

Nearly a decade later, in *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324 (5th Cir.1993), the Fifth Circuit again imposed FMLA liability on an individual "employer." There, a non-owner individual, who did not control the day-to-day operations of a nightclub, was found to be an employer where he was the "driving force" behind the business; he hired two of the nightclub dancers who testified at trial; several witnesses identified him as their supervisor and testified that he gave specific instructions to employees; when he was at the nightclub, the dancers were required to dance his favorite songs; he removed money from the business's safes; he signed employees' payroll checks; he ordered one employee to refrain from keeping records of tips; and he spoke for the business during an investigation of possible FLSA violations. *Id.* at 329. The Fifth Circuit affirmed the district court's determination that the individual was an FLSA "employer," noting that the definition of "employer" is "sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees." *Id.*

 Here, unlike the individual defendants in *Falk, Grim Hotel,* and *Reich,* Ms. Trevino's managerial control over employees and decision-making powers were severely limited. At the relevant time, Ms. Trevino was Gore's human resources manager. Ms. Trevino asserts that she provided recommendations to Gore's senior management regarding human resource objectives, policies, and plans and did not have the authority to act independently.

(Trevino Aff. ¶¶ 4, 11, Docket No. 21, Ex. E.) Her assertions are corroborated by the record. Ms. Trevino recommended Plaintiff's dismissal, but did not make the final decision. (*See* Email from Melissa Trevino.to Gerry Sheridan, Docket No. 24, Ex. 9 (Ms. Trevino stating "[w]e need to discuss"); Email form Gerry Sheridan to Kathy Gore, Docket No. 24, Ex. 18 (stating that Ms. Trevino informed Ms. Gore of Plaintiff's absences); Email from Kathy Gore to Gerry Sheridan, Docket No. 24, Ex. 9 (Ms. Gore making the final decision to terminate Plaintiff)). Moreover, Gore's senior programs manager supervised Plaintiff with respect to her duties relating to customer service; Ms. Trevino only supervised Plaintiff with respect to her general administrative duties. (Trevino Aff. ¶ 7.) When Gore changed Plaintiffs position from office manager to administrative assistant, Ms. Trevino did not make the decision. (*Id.* ¶ 8). Though Ms. Trevino was responsible for making sure Gore complied with the FMLA (Trevino Dep., Docket No. 24, Ex. 10, at 12:11–13), she did not have the authority or control to independently deny FMLA leave (Trevino Aff. ¶ 14) or ultimately ensure compliance (*Id.* ¶ 15). In terminating Plaintiff's employment, Gore president Kathy Gore was the ultimate decision-maker.

Unlike the management partnership in *Falk,* Ms. Trevino did not have almost exclusive and unfettered control over the "terms and conditions" of Plaintiff's employment and ability to take FMLA leave. 414 U.S. at 195, 94 S.Ct. 427. Unlike the individual owner/executive defendant in *Grim Hotel,* Ms. Trevino did not "independently exercised control over [Plaintiff's] work situation." 747 F.2d at 972. Finally, unlike the non-owner individual in *Reich,* Ms. Trevino was not the "driving force" behind Gore. 998 F.2d at 329. The evidence shows that Ms. Trevino recom-

mended FMLA decisions to her superiors, who considered her recommendations but made the ultimate employment decisions. Ms. Trevino was a low- or mid-level manager, who did not "effectively dominate [Gore's] administration or otherwise act[ ], or [have] the power to act, on behalf of [Gore] vis-a-vis its employees." *Id.* Accordingly, the Court finds Ms. Trevino is not an FMLA employer and grants summary judgment in favor of Ms. Trevino.

### IV. Conclusion

For the reasons stated above, Plaintiff's motion for leave to file her surreply (docket no. 29) is GRANTED.

Further, Defendants' motion for summary judgment (docket no. 21) is GRANTED IN PART AND DENIED IN PART as follows:

- Defendants' motion is GRANTED as to Defendant Melissa Trevino, who the Court finds is not an "employer" as defined by 29 U.S.C. § 2611(4)(A).

- Defendants' motion is DENIED as to Defendant Gore Design Completions, Ltd. The Court finds that legitimate issues of material fact exist as to whether Plaintiff Stacy Crane provided Gore with a copy of her FMLA certification "in a timely manner" as required by 29 U.S.C. § 2613(a).

It is so ORDERED.