998 F.2d 324
 62 USLW 2144, 126 Lab.Cas. P 33,007,
26 Fed.R.Serv.3d 921,
1 Wage & Hour Cas.2d (BNA) 945
 Robert B. REICH, Secretary of Labor, United States Dept. of
Labor, Plaintiff-Appellant, Cross-Appellee,
v.
CIRCLE C. INVESTMENTS, INC., d/b/a Lipstick, d/b/a Crazy
Horse Saloon, et al., Defendants-Appellees,
Cross-Appellants.
 No. 92-8318.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 24, 1993.
 
 Paul L. Frieden, William J. Stone, Washington, DC, for appellant.
 Michael T. Morgan, Morgan & Ward, Midland, TX, for appellees.
 Appeals from the United States District Court for the Western District of Texas.
 Before REAVLEY and GARWOOD, Circuit Judges, and LAKE[1], District Judge.
 REAVLEY, Circuit Judge:
 
 
 1
 The Secretary of Labor (Secretary) brought this action pursuant to § 17 of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, to enjoin Circle C Investments, Inc. (Circle C), Beatrice Cranford, and Charles Cranford (collectively defendants) from violating the minimum wage, overtime, and record-keeping provisions of the FLSA and to restrain them from continuing to withhold back wages. The defendants suffered judgment and contend on appeal that the topless dancers at the nightclubs owned by Circle C are not "employees" covered by the FLSA. We hold that they are.
 
 I. BACKGROUND
 
 2
 Since October 1988, Circle C has operated the Crazy Horse Saloon, a nightclub featuring topless dancers. From 1988 to 1990, it also operated a similar nightclub, Lipstick. The Secretary alleges that, since October 1988, Circle C has improperly compensated its dancers, waitresses, disc jockeys, bartenders, doormen, and "house mothers" and has failed to keep accurate records of the hours worked by its employees. In addition to Circle C, the Secretary's complaint names Beatrice and Charles Cranford as defendants. Beatrice Cranford was the original owner of Circle C and served as its president from 1987 to 1991, but she had a minor role in the affairs of the corporation. The district court found Charles Cranford, Beatrice's husband, to be "the driving force behind ... Circle C."
 
 
 3
 Following a bench trial, the district court determined that the topless dancers and the other workers are "employees" within the meaning of the FLSA and that the defendants willfully violated the minimum wage, overtime, and record-keeping provisions of the FLSA. The district court enjoined the defendants from further violating the FLSA and restrained them from withholding $539,630 of back wages. Both sides appeal.
 
 
 4
 On appeal, the defendants contend that (1) the dancers are not employees within the meaning of the FLSA, (2) the district court erred in holding Beatrice and Charles Cranford personally responsible for Circle C's wage and hour compliance, and (3) the district court erred in admitting testimony of witnesses whom the Secretary did not identify before trial. The Secretary cross-appeals, contending that (1) the district court erroneously failed to award prejudgment interest and (2) the district court's calculation of back wages fails to account for amounts paid by employees for costumes, uniforms, "tip-outs," and fines.
 
 II. ANALYSIS
 A. Employee Status of Topless Dancers
 
 5
 The dancers receive no compensation from Circle C. Their compensation is derived solely from tips they receive from customers for performing on stage and performing private "table dances" and "couch dances." At the end of each night, the dancers must pay Circle C a "tip-out," which at the time of trial was set at $20. The dancers are required to pay the "tip-out" regardless of how much they make in tips. The defendants characterize this "tip-out" as stage rental and argue that the dancers are merely "tenants." According to the defendants, the dancers are neither employees nor independent contractors, but are businesswomen renting space, stages, music, dressing rooms, and lights from Circle C.
 
 
 6
 To determine employee status under the FLSA, we focus on whether the alleged employee, as a matter of economic reality, is economically dependent upon the business to which she renders her services. Brock v. Mr. W Fireworks, Inc., 814 F.2d 1042, 1043, 1054 (5th Cir.), cert. denied, 484 U.S. 924, 108 S.Ct. 286, 98 L.Ed.2d 246 (1987). Stated in other words, our focal inquiry in determining employee status is whether the individual is, as a matter of economic reality, in business for herself. Donovan v. Tehco, 642 F.2d 141, 143 (5th Cir.1981). To gauge the degree of the worker's dependency, we consider five factors:
 
 
 7
 (1) the degree of control exercised by the alleged employer;
 
 
 8
 (2) the extent of the relative investments of the worker and alleged employer;
 
 
 9
 (3) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer;
 
 
 10
 (4) the skill and initiative required in performing the job; and
 
 
 11
 (5) the permanency of the relationship.
 
 
 12
 These factors are merely aids in determining the underlying question of dependency, and no single factor is determinative. Mr. W Fireworks, 814 F.2d at 1054. We review the district court's findings as to these five factors for clear error, but we review the district court's ultimate determination of employee status de novo. Id. at 1043-45; see also Castillo v. Givens, 704 F.2d 181, 187-88 n. 12 (5th Cir.), cert. denied, 464 U.S. 850, 104 S.Ct. 160, 78 L.Ed.2d 147 (1983).
 
 
 13
 1. Degree of control exercised by the alleged employer
 
 
 14
 The district court found that Circle C exercises a great deal of control over the dancers. The dancers are required to comply with weekly work schedules, which Circle C compiles with input from the dancers as to the days that they wish to work.[2] Circle C fines the dancers for absences and tardiness. Circle C instructs the dancers to charge at least $10 for table dances and $20 for couch dances. The dancers supply their own costumes, but the costumes must meet standards set by Circle C to promote the desired atmosphere. The dancers can express a preference for a certain type of music, but they do not have the final say in the matter. Several dancers testified that they were expected to mingle with customers when not dancing. Circle C has promulgated many other rules concerning the dancers' behavior; for example, no flat heels, no more than 15 minutes at one time in the dressing room, only one dancer in the restroom at a time, and all dancers must be "on the floor" at opening time. Circle C enforces these rules by fining infringers.
 
 
 15
 The defendants attempt to de-emphasize Circle C's control by arguing that most of the rules are directed at maintaining decorum or keeping the nightclub legal. The defendants explain that Circle C publishes the minimum charge for table and couch dances at the request of the dancers to prevent dancers from undercutting each others' prices. Finally, the defendants stress the fact that Circle C does not control the dancers' dance routines.
 
 
 16
 Despite the defendants' effort on appeal to downplay Circle C's control, the record fully supports the district court's finding of significant control.
 
 
 17
 2. Relative investment of worker and alleged employer
 
 
 18
 The district court found that a dancer's investment is limited to her costumes and a padlock. The amount spent on costumes varies from dancer to dancer and can be significant. (One dancer testified that she spends $600 per month on costumes, while another dancer testified that she spends approximately $40 per month on costumes.) The defendants contend that we should also consider as an investment each dancer's nightly "tip-out," which the defendants characterize as rent. The district court rejected the defendants' argument that the "tip-out" is rent, and so do we--it is the economic realities that control our determination of employee status.
 
 
 19
 A dancer's investment in costumes and a padlock is relatively minor to the considerable investment Circle C has in operating a nightclub. The fact that the district court did not make specific findings regarding Circle C's investment does not detract from our analysis given the obvious significant investment Circle C has in operating a nightclub. The record does not completely identify Circle C's investment, but it does reveal that Circle C owns the liquor license, owns the inventory of beverages and refreshments, leases fixtures for the nightclub (e.g., the stage and lights), owns sound equipment and music, maintains and renovates the facilities, and advertises extensively.
 
 
 20
 3. Degree to which employee's opportunity for profit and loss is determined by the alleged employer
 
 
 21
 The district court recognized that, once customers arrive at Circle C's nightclubs, a dancer's initiative, hustle, and costume significantly contribute to the amount of her tips. But Circle C has a significant role in drawing customers to its nightclubs. The district court recognized that Circle C is responsible for advertisement, location, business hours, maintenance of facilities, aesthetics, and inventory of beverages and food. Cf. Usery v. Pilgrim Equipment Co., 527 F.2d 1308, 1313 (5th Cir.) (recognizing significance of the alleged employer's control over the "price, location, and advertising--determinants of customer volume...."), cert. denied, 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976).
 
 
 22
 Given its control over determinants of customer volume, Circle C exercises a high degree of control over a dancer's opportunity for "profit." The dancers "are far more closely akin to wage earners toiling for a living, than to independent entrepreneurs seeking a return on their risky capital investments." Mr. W Fireworks, 814 F.2d at 1051.
 
 4. Skill and initiative required
 
 23
 Many of the dancers did not have any prior experience with topless dancing before coming to work for Circle C. The dancers do not need long training or highly developed skills to dance at a Circle C nightclub. As for the initiative exerted by the dancers, this court has concluded that the ability to develop and maintain rapport with customers is not the type of "initiative" contemplated by this factor. See id. at 1053 (quoting Pilgrim Equipment Co., 527 F.2d at 1314). Compare Hickey v. Arkla Indus., Inc., 699 F.2d 748, 752 (5th Cir.1983) (noting that the worker was able to exert initiative in the operation of his business by controlling his advertising, marketing and sales methods, and choice of products to sell). A dancer's initiative is essentially limited to decisions involving her costumes and dance routines. The dancers do not exhibit the skill or initiative indicative of persons in business for themselves.
 
 5. Permanency of the relationship
 
 24
 The parties dispute whether Circle C permits its dancers to perform at competing nightclubs. The district court did not make a specific finding on this point, but we will assume for purposes of this appeal that Circle C allows its dancers to move from nightclub to nightclub. Cf. McLaughlin v. Seafood Inc., 867 F.2d 875, 877 (5th Cir.1989) (noting that workers moved frequently from plant to plant and from employer to employer). The parties do agree, and the district court found, that most dancers have short-term relationships with Circle C.[3] Although not determinative, the impermanent relationship between the dancers and Circle C indicates non-employee status. See id. at 876-77.
 
 
 25
 Despite the lack of permanency, on the balance, the five factors favor a determination of employee status. A dancer has no specialized skills and her only real investment is in her costumes. Circle C exercises significant control over a dancer's behavior and opportunity for "profit." The transient nature of the work force is not enough here to remove the dancers from the protections of the FLSA. In analyzing the five factors, we must not lose sight of economic reality. Here, the economic reality is that the dancers are not in business for themselves but are dependent upon finding employment in the business of others. We reject the defendants' creative argument that the dancers are mere tenants who rent stages, lights, dressing rooms, and music from Circle C.
 
 
 26
 B. Beatrice and Charles Cranford as "Employers"
 
 
 27
 The district court ruled that both Beatrice and Charles Cranford are "employers" within the meaning of the FLSA. Accordingly, the district court's order enjoins Beatrice and Charles personally from violating FLSA provisions and from continuing to withhold $539,630.00 of back wages. See Donovan v. Sabine Irrigation Co., 695 F.2d 190, 196 (5th Cir.) (recognizing that if an individual is deemed an employer under the FLSA, he may be enjoined along with the corporate employer), cert. denied, 463 U.S. 1207, 103 S.Ct. 3537, 77 L.Ed.2d 1387 (1983). The Secretary now concedes that the evidence at trial is insufficient to support the district court's holding that Beatrice Cranford is an "employer" under the FLSA. We therefore limit our review to the district court's treatment of Charles Cranford.
 
 
 28
 The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA's definition of employer must be liberally construed to effectuate Congress' remedial intent. Sabine Irrigation, 695 F.2d at 194. This court has held that the FLSA's definition of employer is "sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees." Id. at 194-95; see also Donovan v. Grim Hotel Co., 747 F.2d 966, 972 (5th Cir.1984) (observing that an individual qualifies as an employer if he "independently exercised control over the work situation"), cert. denied, 471 U.S. 1124, 1124, 105 S.Ct. 2654, 2655, 86 L.Ed.2d 272 (1985). We review the district court's ultimate conclusion that Charles Cranford is an "employer" de novo and review the court's subsidiary findings for clear error.
 
 
 29
 Charles Cranford does not have an ownership interest in Circle C and does not control the day-to-day operations of Circle C.[4] His "consulting" agreement with Circle C purports to exclude personnel matters from his responsibilities. But the testimony at trial convinces us that Charles Cranford exercised control over the work situation: he was the driving force behind Circle C; he hired two of the dancers who testified at trial; several of the witnesses identified him as their supervisor and testified that he gave specific instructions to employees; when he was at the nightclubs, the dancers were required to dance to his favorite songs; he removed money from Circle C's safes; he signed employees' payroll checks; he ordered one employee to refrain from keeping records of the tip-outs; and he spoke for Circle C during the Secretary's investigation of possible FLSA violations. In addition to the above evidence, the Secretary introduced an inter-office memorandum that purports to be from Charles Cranford. The memorandum reports fines that had been assessed for rule infractions and warns of future fines if certain rules were not obeyed. Charles Cranford denies dictating or writing this memorandum. One of the Secretary's witnesses, however, testified that inter-office memoranda from Charles Cranford were common.
 
 
 30
 Based upon our review of the record, we cannot say that the district court committed error in its determination that Charles Cranford was an employer within the meaning of the FLSA.
 
 C. Other Issues on Appeal
 1. Secretary's witnesses
 
 31
 The defendants contend that the district court erred by allowing the testimony of witnesses whom the Secretary did not identify before trial. After the witnesses testified, the defendants requested a continuance. Despite its belief that the testimony did not surprise the defendants, the district court granted the defendants a continuance. But then the defendants withdrew their request for a continuance, claiming that "the damage had been done" and that they were under pressure to quickly resolve the matter.
 
 
 32
 This court will not disturb an evidentiary ruling unless it substantially prejudices the complaining party. FED.R.CIV.PRO. 61; Smith v. Wal-Mart Stores (No. 471), 891 F.2d 1177, 1180 (5th Cir.1990). We find no evidence of substantial prejudice, especially considering the defendants' refusal to take advantage of the district court's continuance offer.
 
 2. Prejudgment interest
 
 33
 Prejudgment interest on back wages is appropriate in actions brought under § 17 of the FLSA. See Marshall v. Hope Garcia Lancarte, 632 F.2d 1196, 1199 (5th Cir.1980); Usery v. Associated Drugs, Inc., 538 F.2d 1191, 1194 (5th Cir.1976). The district court erred by not including prejudgment interest in its judgment and must correct this error on remand.
 
 
 34
 3. District court's calculation of back wages
 
 
 35
 The district court determined that the defendants owe employees $539,630.00 in back wages. In his cross-appeal, the Secretary contends that the district court's calculation of back wages is incorrect because it fails to take into account (1) the "tip-outs" paid by the dancers and waitresses (2) expenditures for costumes and uniforms worn by the dancers, disc jockeys, and waitresses; and (3) fines imposed on employees.
 
 
 36
 The district court failed to address in its order the Secretary's request for reimbursement of these costs and fines, despite the fact that the Secretary raised this issue during pretrial proceedings, during trial, and in post-trial documents. These costs and fines were specifically included in the compliance officer's back-wage calculation, which the Secretary presented during trial and in his proposed findings of fact and conclusions of law. We remand to the district court for specific findings of fact and conclusions of law on whether reimbursement for these costs and fines should be included in the calculation for back wages and, if so, the proper amount to be included. See Utley v. Commissioner, 906 F.2d 1033, 1041 (5th Cir.1990) (remanding case because the district court failed to specifically address an issue raised by the parties).
 
 III. CONCLUSION
 
 37
 We agree with the district court's determination that the dancers are "employees" covered by the FLSA and that Charles Cranford is an "employer" within the meaning of the FLSA. But we vacate the judgment and remand the cause with instructions that the district court (1) enter judgment in favor of Beatrice Cranford, (2) include prejudgment interest in its judgment against Charles Cranford and Circle C, and (3) make the necessary findings of fact and conclusions of law with respect to the Secretary's request for reimbursement of certain costs and fines.
 
 
 38
 VACATED and REMANDED.
 
 
 
 [1]
 District Judge of the Southern District of Texas, sitting by designation
 
 
 [2]
 One dancer testified that even though she was not scheduled to work on Christmas and New Year's Day, management came to her home and ordered her to work
 
 
 [3]
 One of the trial exhibits lists some of the dancers' durations: five days, three months, five days, thirty days, sixty days, three weeks, three months, three months, and five months
 
 
 [4]
 At one time, Beatrice Cranford was the sole owner of Circle C. Several of the witnesses, however, testified that they thought Charles owned the nightclubs