NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0595n.06

Case No. 20-3287

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
|  | ) | **FILED**<br>Oct 20, 2020<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| JAMIE GILBO; ALYSSA SMITH, | ) |  |
|  | ) |  |
| Plaintiffs-Appellees, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| AGMENT, LLC; HARLEY ROWE, | ) |  |
|  | ) |  |
| Defendants-Appellants. | ) | **O P I N I O N** |
|  | ) |  |

BEFORE: McKEAGUE, GRIFFIN, and BUSH, Circuit Judges.

**McKEAGUE, Circuit Judge.** Agment, LLC and its president and owner, Harley Rowe, operate a strip club called the Brass Pole in Elyria, Ohio. After working there for many months, plaintiffs Jamie Gilbo and Alyssa Smith sued Agment, LLC and Rowe for violations of the Fair Labor Standard Act's (FLSA's) minimum-wage and overtime provisions and Ohio law. Gilbo and Smith were former exotic dancers at Brass Pole and argued that they were covered by the FLSA and were employees, not independent contractors. After discovery, they filed a summary judgment motion on these points, which the district court granted. Agment, LLC and Rowe appeal the summary judgment order, arguing that the district court was wrong on both counts.

We find their arguments to be without merit and **AFFIRM** the district court's summary judgment order.

I

Harley Rowe is the owner, president, and managing member of Agment, LLC, a company that does business as the Brass Pole.[1]  Brass Pole is a strip club in Elyria, Ohio and has many employees who are paid wages, such as managers, bouncers, bartenders, a "door girl," a "house mom," and a DJ.  However, Brass Pole claims the exotic dancers who work there are independent contractors, not employees.  Instead of being paid wages for the dances they provide, they receive only tips from customers, a portion of which must be paid back to Brass Pole after every dance.

In 2016, unsatisfied with this arrangement, two exotic dancers who formerly worked at Brass Pole sued Agment, LLC and Rowe for violations of the Fair Labor Standards Act (FLSA). *Lester v. Agment, LLC*, No. 1:15 CV 886, 2016 WL 1588654 (N.D. Ohio Apr. 20, 2016).  On summary judgment, the district court concluded that the two exotic dancers should be classified as employees, not independent contractors, and therefore the FLSA's minimum wage and overtime provisions applied.  *Id.* at \*7.  That ruling was limited to the two plaintiffs in that case, though, and Brass Pole did not change its practice of classifying its dancers as independent contractors or start paying them minimum wage and overtime.

Three years later, two more exotic dancers who formerly worked at Brass Pole—the plaintiffs in this case—sued on the same grounds.  On April 5, 2019, Jamie Gilbo filed a complaint against Brass Pole for violations of the FLSA and Alyssa Smith joined the litigation on April 9, 2019.  Discovery proceeded, and they eventually filed a summary judgment motion asking the

---

[1] For purposes of this appeal, Agment, LLC and Rowe raise no separate issues.  Therefore, they will be referred to collectively as "Brass Pole" throughout this opinion.

court to rule in their favor on six issues: (1) they were employees, not independent contractors, of Brass Pole; (2) they were individually covered under the FLSA; (3) Rowe was personally liable for their claims; (4) Brass Pole violated the FLSA's & Ohio's minimum-wage requirements; (5) Brass Pole violated record-keeping laws; and (6) damages.

In response to Gilbo's and Smith's summary judgment motion, Brass Pole made only two arguments: first, Brass Pole argued that Gilbo and Smith were independent contractors, not employees, and second, Brass Pole argued that enterprise coverage under the FLSA did not apply. The second argument was unnecessary because enterprise coverage was never an issue in the case; Gilbo and Smith only claimed individual coverage. On February 14, 2020, the district court issued an order granting summary judgment against Brass Pole, holding that Gilbo and Smith should be classified as employees, and awarding $17,744.97 to Gilbo and $17,191.26 to Smith for minimum-wage violations.

This appeal followed.

## II

"We review the district court's grant of summary judgment *de novo*." *George v. Youngstown State Univ.*, 966 F.3d 446, 458 (6th Cir. 2020). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute of a material fact is genuine so long as 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016) (quoting *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 551 (6th Cir. 2002)). "Where the moving party has the burden of proof, her 'showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.'" *Allan v. Pa. Higher Educ. Assistance Agency*,

968 F.3d 567, 570–71 (6th Cir. 2020) (quoting *Calderon v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)).

Brass Pole makes two challenges to the district court's summary judgment order. First, Brass Pole claims that the district court incorrectly determined that Gilbo and Smith were individually covered under the FLSA, and second, Brass Pole claims that Gilbo and Smith were incorrectly classified as employees, rather than as independent contractors.

A. *Individual Coverage under the FLSA*

The first question is whether the FLSA applies here at all. Coverage under the FLSA can be established by showing either (1) enterprise coverage or (2) individual coverage. Enterprise coverage exists where an employer's "annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(ii). Individual coverage, on the other hand, examines whether the company "has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." 29 U.S.C. § 203(s)(1)(A)(i). Gilbo and Smith do not claim that enterprise coverage applies.

Unfortunately for Brass Pole on appeal, it did not challenge or contest individual coverage before the district court. Generally, "the failure to present an issue to the district court forfeits the right to have the argument addressed on appeal." *Vance v. Wade*, 546 F.3d 774, 781 (6th Cir. 2008) (quoting *Armstrong v. City of Melvindale*, 432 F.3d 695, 699–700 (6th Cir. 2006)). We follow this rule for two main reasons: "the rule eases appellate review by having the district court first consider the issue [and it] . . . ensures fairness to litigants by preventing surprise issues from appearing on appeal." *Cone v. Tessler*, 800 F. App'x 405, 409 (6th Cir. 2020) (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir 2008)).

Both reasons apply in full force here. Brass Pole's extensive argument over whether Gilbo and Smith utilized music downloaded from the internet is a fact-intensive question that the district court was better-suited to handle, rather than considering it here for the first time. Furthermore, Brass Pole offers no reason why it failed to make its individual-coverage argument before the district court. Brass Pole's only attempted justification comes in its reply, where it states "that any deficiencies in the summary judgment response [are] very uncharacteristic" of the attorneys who handled it. However, we must remember that "an oversight on the part of . . . counsel is not alone a justification for departing from our usual procedure of non-review of issues not raised below." *Cone*, 800 F. App'x at 410 (quoting *United States v. Means*, 133 F.3d 444, 448 (6th Cir. 1998)). By not contesting that Gilbo and Smith were individually covered by the FLSA, Brass Pole forfeited this argument. Therefore, we uphold the district court's ruling that Gilbo and Smith were individually covered by the FLSA.

B. *Employees or Independent Contractors*

Because FLSA coverage is established, we must assess whether Gilbo and Smith were employees or independent contractors, as the FLSA only applies to employees. "Whether a FLSA plaintiff is an employee is a mixed question of law and fact." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015) (quoting *Lilley v. BTM Corp.*, 958 F.2d 746, 750 n.1 (6th Cir. 1992)). And because we are reviewing the district court's decision on summary judgment, we must "decide whether there is a genuine dispute of material fact as to whether" plaintiffs were employees "such that summary judgment is inappropriate." *Id.*

In determining whether a worker should be classified as an employee or independent contractor, labels do not matter; instead, we conduct an "economic reality" test. *See Keller*,

781 F.3d at 807 (quoting *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984)).  In this test,

six factors must be analyzed and balanced, which are:

> 1) the permanency of the relationship between the parties; 2) the degree of skill required for the rendering of the services; 3) the worker's investment in equipment or materials for the task; 4) the worker's opportunity for profit or loss, depending upon his skill; . . . 5) the degree of the alleged employer's right to control the manner in which the work is performed[; . . . and 6)] whether the service rendered is an integral part of the alleged employer's business.

*Id.* (quoting *Brandel*, 736 F.2d at 1117 & n.5 (alterations in original)).

Further, we note that in conducting this balancing, we must consider the FLSA's "strikingly

broad" definition of "employee," *id.* at 804, and we should ultimately avoid "a 'narrow, grudging'

interpretation of the FLSA" while "remember[ing] its 'remedial and humanitarian' purpose."

*Monroe v. FTS USA, LLC*, 860 F.3d 389, 403 (6th Cir. 2017) (quoting *Herman v. Fabri-Centers*

*of Am., Inc.*, 308 F.3d 580, 585 (6th Cir. 2002)).

Finally, we must note that we do not write on a blank slate.  Many courts to examine

whether exotic dancers are employees of the clubs where they work have answered yes.[2]  What's

more, in 2016 a district court conducted this exact same analysis involving this exact same club,

and it concluded that the two former exotic dancers at Brass Pole were employees.  *See Lester*,

2016 WL 1588654, at *7.  With that background, we analyze the "economic reality" factors.

### 1. Permanency of the relationship

The first factor examines the "length and regularity of the working relationship between

the parties" because independent contractors "often have fixed employment periods and transfer

---

[2] *See, e.g.*, *Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 229–32 (3d Cir. 2019); *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 241–44 (4th Cir. 2016); *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 328–29 (5th Cir. 1993); *Hurst v. Youngelson*, 354 F. Supp. 3d 1362, 1378 (N.D. Ga. 2019); *Hart v. Rick's Cabaret Int'l, Inc.,* 967 F. Supp. 2d 901, 912–19 (S.D.N.Y. 2013); *Jones v. Shac LLC*, No. 2:15-cv-01382-RFB-NJK, 2019 WL 4246681, at *8–13 (D. Nev. Sep. 6, 2019); *Pizzarelli v. Cadillac Lounge, L.L.C.*, No. 15-254 WES, 2018 WL 2971114, at *2–6 (D.R.I. Apr. 13, 2018).

from place to place as particular work is offered to them, whereas 'employees' usually work for only one employer and such relationship is continuous and indefinite in duration." *Keller*, 781 F.3d at 807 (citation omitted). For exotic dancers, courts generally find that because "nude entertainers tend to be transient or itinerant," this "factor is entitled to only modest weight in assessing employee status under the FLSA." *Hurst v. Youngelson*, 354 F. Supp. 3d 1362, 1377 (N.D. Ga. 2019) (first quoting *Clincy v. Galardi S. Enters.*, 808 F. Supp. 2d 1326, 1348 (N.D. Ga. 2011); then quoting *Hanson v. Trop, Inc.*, 167 F. Supp. 3d 1324, 1332 (N.D. Ga. 2016)).

While that may be true as a general matter, Gilbo and Smith were not transient workers. Gilbo worked at Brass Pole from approximately August 14, 2018 to March 26, 2019 (seven months), and Smith worked at Brass Pole from approximately June 22, 2018 to June 3, 2019 (almost a year). These are significant periods of time. This stands in contrast to the previous case against Brass Pole where the plaintiffs had worked for Brass Pole for only a few months. *See Lester*, 2016 WL 1588654, at *5. Furthermore, this factor focuses on exclusivity, not just length. Gilbo and Smith worked for Brass Pole and Brass Pole alone while they were there. Therefore, this factor weighs in favor of Gilbo and Smith.

2. <u>Degree of skill</u>

This factor assesses the complexity of the work performed, how the worker acquired their skill, and the length of the worker's training period. *See Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1055–56 (6th Cir. 2019); *Keller*, 781 F.3d at 809. Both parties agree that this factor supports Gilbo and Smith, as exotic dancing does not require any special training and Brass Pole provides no training to dancers.

3. Investment in specialized equipment

This factor compares the worker's total investment in the company to "the company's total investment, including office rental space, advertising, software, phone systems, or insurance," and "is most significant if it reveals that the worker performs a specialized service that requires a tool or application which he has mastered." *Keller*, 781 F.3d at 810 (quoting *Brandel*, 736 F.2d at 1119). In the exotic dancer context, "nearly every other court has found . . . that the third factor points towards an employee-employer relationship." *Hurst*, 354 F. Supp. at 1376 (collecting cases). This is because exotic dancers often pay only for their clothing and makeup compared to the "considerable investment" owners must make in operating nightclubs. *Harrell v. Diamond A Ent.*, 992 F. Supp. 1343, 1350 (M.D. Fla. 1997).

So too here. Brass Pole invests in essentially its entire business operation with no input or investment by the dancers. Brass Pole pays for utilities, insurance, taxes, food, drinks, advertising, phone systems, and software, and also controls the lighting, décor, layout, and operating hours. The dancers do not invest in the business and do not purchase any specialized equipment. In its brief, Brass Pole's only argument against this is that the dancers must pay "some of their dance revenue proceeds" to Brass Pole. The value of a few twenties passed to the owner pales in comparison to the substantial amount of money it costs to operate Brass Pole. This factor weighs heavily in favor of Gilbo and Smith.

4. Opportunities for profit or loss

This factor examines whether workers have "opportunit[ies] for greater profits based on [their] management and technical skills." *Keller*, 781 F.3d at 812. One example would be a worker who can "improve his efficiency such that he c[an] complete more" jobs per day. *Id.* at 813.

Drawing customers to Brass Pole is "the critical factor in determining the profits and losses" of everyone involved in the business. *See Lester*, 2016 WL 1588654, at *6; *see also Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 920 (S.D.N.Y. 2013). Brass Pole handled the advertising, marketing, aesthetics, location, and maintenance of its building. Brass Pole therefore had substantial control over what opportunities the dancers had to make profits.

Brass Pole's only argument to the contrary is that Gilbo and Smith "were free to solicit their own patrons to perform dances if they so chose." Strip club owners often suggest that a dancer's ability to "hustle" for more customers gives the dancers significant opportunity for profit or loss, but "[t]his argument . . . has been almost universally rejected." *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 243 (4th Cir. 2016); *see also Levi v. Gulliver's Tavern, Inc.*, No. 15-216, 2018 WL 10149710, at *5 (D.R.I. Apr. 23, 2018) (calling this argument "ill-fated" and noting that "nearly every court to consider this argument has rejected it"). This makes sense. Ultimately, what a dancer earns is "limited by the bounds of good service" and the nightclub itself "takes the risks and reaps the returns." *Thompson v. Linda and A. Inc.*, 779 F. Supp. 2d 139, 149 (D.D.C. 2011) (quoting *Harrell*, 992 F. Supp. at 1352). This factor weighs in Gilbo's and Smith's favor.

5. Degree of control

This factor focuses on the level of control that the employer has over its workers as well as whether the employer "'retains the right to dictate the manner' of the worker's performance." *Off Duty Police*, 915 F.3d at 1060 (quoting *Brandel*, 736 F.2d at 1119). In analyzing this factor, courts have examined things like uniform requirements, general rules on workplace conduct, control over who could enter the building, and control over customers of a business. *See id.*; *Hurst*, 354 F. Supp. 3d at 1373.

Here, Brass Pole exercises substantial control over its dancers. Brass Pole's management utilizes sign-in sheets to record information about its dancers for every shift, including information about when they arrive, when they leave, and whether they left early. Not only that, dancers must work shifts for at least six hours, must work weekday shifts in order to work weekend shifts, and must receive permission from a manager to leave early. Brass Pole enforces a dress code for its dancers, controls the rates for their dances, and keeps a portion of all their tips. Brass Pole's only argument on this factor addresses the sign-in sheets, claiming that they were for the DJ's reference alone. But Rowe himself admitted that the DJ never even looks at the sign-in sheets. The level of control Brass Pole exercises over its dancers is high, so this factor weighs in favor of Gilbo and Smith.

6. Integral part of the business

The final factor asks whether the worker provides services that are integral to the employer's business, and "[t]he more integral the worker's services are to the business, then the more likely it is that the parties have an employer-employee relationship." *Keller*, 781 F.3d at 815. Both parties agree that this factor supports Gilbo and Smith.

Here, the services provided by exotic dancers like Gilbo and Smith are the integral component of Brass Pole (just as the name implies). While Brass Pole calls itself a bar and grill, it has no kitchen and instead sometimes serves precooked microwavable burgers, hot pockets, and pizza from Sam's Club. In analyzing this factor, other courts have asked whether the business "could not function without the services its" workers provide. *See Off Duty Police*, 915 F.3d at 1055. Here, Brass Pole could not function without the services of its dancers. This factor weighs heavily in favor of Gilbo and Smith.

7. <u>Conclusion</u>

After considering all of these factors, we have no trouble concluding that the district court was correct in deciding that Gilbo and Smith were employees under the FLSA.[3]  All six factors reflect the "economic reality" that Gilbo and Smith are employees of Brass Pole, not independent contractors.  Based on the record before the district court, we conclude that the district court was correct in finding that Gilbo and Smith were employees of Brass Pole while working there.

**III**

For the foregoing reasons, we **AFFIRM** the district court's summary judgment order.

---

[3] Because we find that Gilbo and Smith were properly classified as employees under the FLSA, we do not address their argument that Ohio law provides an independent basis to affirm the district court's decision.